In the Matter of SILVER MILL FROZEN FOODS, INC., Debtor.

Maurice A. EDLEMAN, Trustee, Plaintiff,

v.

William GLEASON, d/b/a Gleason Farms, Defendant.

Maurice A. EDLEMAN, Trustee,

v.

David TIMMRECK, Greg Tidey, Carl Tidey, Krause Farms, et al., S & S Farms, Leonard Frank, Herbert Teichman, Defendants.

Maurice A. EDLEMAN, Trustee, Plaintiff,

v.

Jerome ALVESTER, James Dean, Wilbur De Ruiter, Fowler Farms, Hauch Farms, et al., John Herremans, Ron Koposky and Stan Koposky, David Kugel, Roger Molter and Alice Molter, Morrison's Inc., Clifford Moulton, Scott Munro, Nye Brothers Orchards, Joe Oomen, Robert Pagel, Jr., Merle Phillippi, Fred Piedt, Phillip Prillwitz, Wesley Prillwitz, Phillip Smith, Arnold Stout, George Wuszke, William Gleason d/b/a Gleason Farms, Hall, McManus & Gleason, Michigan Blueberry Growers Association, Joseph Send, Defendants.

Bankruptcy No. HG 80 00025.
Adv. Nos. 81 1977.*

United States Bankruptcy Court,
W. D. Michigan.

Sept. 20, 1982.

* Also Adv. Nos. 81 1788, 81 1815, 81 1818, 81 1849, 81 1791, 81 1798, 81 1800, 81 1781, 81 1773, 81 1789, 81 1824, 81 1861, 81 1779, 81 1814, 81 1796, 81 1772, 81 1809, 81 1822, 81 1782, 81 1778, 81 1784, 81 1795, 81 1774, 81 1794, 81 1780, 81 1786, 81 1787, 81 1776, 81 1785, 81 1977, 81 1980, 81 1978 and 81 1976.

**180**

OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

Preferences/Statute of Limitations/Laches

Effect of Confirmation

Consolidation on Common Issues

On January 4, 1980, the debtor Silver Mill Frozen Foods, Inc. filed for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* An amended plan of reorganization was confirmed on July 2, 1980. Under that plan, unsecured creditors were to receive 52% of their claims: 25% when the plan became effective, and 27% on December 15, 1980. The plan further provided that if the debtor failed to make any of these payments and the creditors' committee filed a request for conversion, the case would be converted to Chapter 7. The debtor failed to make the second payment of 27%, and the case was converted to Chapter 7 on December 27, 1980. Maurice Edleman was appointed trustee.

The trustee has commenced numerous adversary proceedings to recover preferential transfers pursuant to 11 U.S.C. § 547. The defendants in these proceedings, consolidated here for the purpose of argument, are growers who sold produce to the debtor, Silver Mill Frozen Foods. These matters are presently before the court on defendants' motion for summary judgment, and the trustee's motion to consolidate hearings on common issues of fact. The issues presented in the summary judgment motion are whether the trustee is barred by the statute of limitations or laches from bringing these preference actions, and whether a confirmed plan of reorganization bars the trustee if the case is subsequently converted to a Chapter 7 proceedings. Additionally, the defendants have requested credit for the 25% payment made to unsecured creditors under the plan if the motion is denied. Oral argument was heard on June 14, 1982, and additional time for briefing was allowed.

11 U.S.C. § 546 sets forth the limitations on a trustee's right to recover preferences. That section provides, in pertinent part:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and

(2) the time the case is closed or dismissed.

The statute is clear that the two year limitation runs from the date the trustee is appointed, not the date the case is filed. Collier declares that if a debtor in possession is serving in a Chapter 11 case and no trustee has yet been appointed, the two year period will not begin to run unless, and until, a trustee is appointed. 4 Collier on Bankruptcy ¶ 546.02[2] (15th Ed. 1979).

■ Section 1107(a) of the Code gives a debtor in possession basically all the rights and powers of a trustee. However, Collier explains that,

> . . . section 1107(a), does not equate service of the debtor in possession with the appointment of a trustee for those purposes of section 546(a). If a trustee is appointed in a case under Chapter 11 or in a case converted from Chapter 11, he will have two years from the date of his appointment to commence actions pursuant to 546(a).

4 Collier on Bankruptcy ¶ 546.02[2] (15th Ed. 1979); *See also: In re One Marketing Co., Inc.,* 8 Bankr.Ct.Dec., 17 B.R. 738 (CRR) 917 (Bkrtcy.S.D.Tex.1982). In the present situation, the preference actions were brought within two years of the appointment of the trustee and thus are not barred by § 546(a)(1).

Section 546(a)(2) bars the commencement of a preference action if the case is "closed or dismissed." Defendants contend that his case was closed upon confirmation of the plan since the court retained only very limited jurisdiction. The Code is not very clear on when a Chapter 11 case is closed. Section 350(a) requires the court to close a case after the estate is "fully administered" and the trustee has been discharged. Bankruptcy Rule 514 contains similar language that an estate shall be closed after it has been "fully administered."

■ While there is little in the comments or legislative history to define what is meant by "fully administered", it is apparent that this case was not closed upon confirmation. The bankruptcy court retained rather substantial jurisdiction. Under Article V of the plan, the court retained power to determine claims, compel compliance

with the plan, insure cash payments were made, and complete any adversary proceedings. Given this retention of jurisdiction, I can not conclude that this case was closed upon confirmation. Conceivably, a plan could be closed upon confirmation where debentures or notes were issued which would be enforceable in state court, and the bankruptcy court retained little or no continuing jurisdiction. That is not the situation here, however, and this case was not "fully administered" upon confirmation. Accordingly, the trustee is not barred by § 546(a)(2) from bringing these preference actions.

■ The equitable doctrine of laches does not bar these preference actions either. The Ninth Circuit in *Royal Air Properties v. Smith,* 312 F.2d 210, 214 (9th Cir. 1962) held that laches is not applicable where the cause of action is governed by a statute of limitations. The court stated,

> Where Congress has provided a specific and relatively short statute of limitations, it can be inferred that the federally created limitation is not to be cut short;
>
> . . . .

The Sixth Circuit is in accord with this view. In *Thropp v. Bache Halsey Stuart Shields Inc.,* 650 F.2d 817, 822 (6th Cir. 1981), the court found laches inapplicable to legal claims controlled by state statutes of limitation. In addition, a laches defense has been found to be unavailable in sex discrimination actions brought under Title VII, 42 U.S.C. § 2000e *et seq.,* since the legislature has fixed a period within which an action may be brought. *Woodrum v. Abbott Linen Supply,* 428 F.Supp. 860, 862 (S.D.Ohio 1977). Therefore, since § 546(a) establishes a short limitation period for bringing preference actions, and these actions were brought within that time period, laches is not available as a defense.

■ Even if laches is available as a defense, it does not apply in these cases. Laches generally requires proof of a lack of diligence by the party against whom the defense is asserted, and prejudice to the party asserting the defense. *Costello v.*

*United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). Applying the standards set forth in *Bache, supra,* defendants must show that the trustee had prior knowledge of the preferential transfers, that he did not assert his legal claim diligently, and that the defendants suffered prejudice as a result.

■ Here, the trustee did not have knowledge of the preferential transfers until after he was appointed and able to inspect the books of the debtor. Further, there is no evidence of lack of diligence or unreasonable delay. In determining whether the delay was unreasonable, courts have traditionally looked to the statute of limitations as a frame of reference. *Metropolitan Wire v. Falcon Products,* 528 F.Supp. 897, 902 (E.D.Pa.1981). These actions were brought within the limitation period. Where suit is filed within the statute of limitations, the burden is on the defendant asserting the defense of laches to show that he was prejudiced. *Price v. Levers,* 475 F.Supp. 937, 942 (W.D.Pa.1979). Here, the defendants can show no prejudice other than the fact that they will have to return money they are not entitled to under § 547 of the Code. This is not sufficient prejudice to invoke the doctrine of laches.

This is not a situation where defendants can invoke laches by claiming they were lulled into a false sense of security. The Court in *Whitman v. Walt Disney Productions, Inc.,* 263 F.2d 229, 231 (9th Cir. 1958), stated that,

> . . . if the passage of time can be shown to have lulled defendant into a false sense of security, and the defendant acts in reliance thereon, laches may in the discretion of the trial court, be found.

Here, while defendants may have been lulled into a false sense of security that any monies they received pre-petition would not have to be returned, there is no real reliance on their part. Merely spending the money received is insufficient reliance. This argument is traditionally raised in the context of trademark and patent infringement. Usually, the defendant relies on plaintiff's silence to expand his company, or

develop and market products in violation of another's trademark. In such a situation, the harm increases because of the delay. *See, Whitman, supra.* Here, the harm to defendants is no greater than it was on the date of filing. Laches is not appropriate.

■ Defendants further contend that the confirmed Chapter 11 plan constitutes a settlement, and therefore bars the trustee's right to commence these preference actions. Specifically, they point to Article IV of the plan which provides:

> *Effect of Confirmation.* Confirmation of this Amended Plan of Arrangement shall constitute complete settlement with affected creditors and interest holders except as to payments of amounts called for by this amended plan.

Defendants may be correct in urging that this was to be a settlement of all claims, including possible preference claims by Silver Mill against creditors affected by the plan. However, a key element of the settlement is Article III, paragraph G, which states that:

> The claims included in Class 7 . . . [unsecured creditors without priority claims in excess of $1000] shall be settled and satisfied by the payment to the holders thereof of Fifty-Two Percent (52%) of their respective claims in the following manner:
>
> (1) Twenty-five percent (25%) of said claim shall be paid in cash on the effective date of this amended Plan or at such later time as the court may direct; and
>
> (2) Twenty-seven percent (27%) of said claim shall be paid in cash on December 15, 1980 or at such later time as the court may direct.

Since this second payment of 27% was not made, the plan can not be said to have worked a satisfaction of all claims. The failure of the plan to become fully consummated permits the creditors to receive a higher percentage under liquidation if assets are available, and permits the trustee to seek recovery of any preferential transfers.

■ The law is clear that a compromise settlement that is performed in accordance with its terms becomes an accord and satisfaction and discharges the original obligation. *Fricke v. Forbes,* 294 Mich. 375, 379, 293 N.W. 686 (1940). However, as the court in *Fricke* noted,

> If the agreement of compromise is breached by what is in effect a failure or refusal to perform, the original cause of action is revived, and the other party may elect to regard the compromise as rescinded and proceed upon the original demand. 11 Am.Jur. p. 275.

*Supra* at 379, 293 N.W.2d 686. *See,* 1 Am. Jur.2d, Accord and Satisfaction §§ 47, 52.

In this case, there could be no satisfaction until the debtor made the second payment. A partial payment can not be said to have satisfied all obligations to the creditors. The creditors are entitled to receive either the second installment on a timely basis, or proceed for the full amount owed them. Likewise, upon the collapse of the settlement, the trustee is not barred from asserting any claims or counterclaims the debtor would have. The failure of the accord and satisfaction allows either party to press their original claims.

Further, the doctrine of res judicata does not bar the trustee. While a confirmed plan is binding upon all parties, and all issues that could have been raised pertaining to such plan are barred by the doctrine of res judicata, 5 Collier on Bankruptcy ¶ 1141.01[1] (15th Ed. 1979); *See also, Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1935); *Miller v. Meinhard-Commercial Corp.,* 462 F.2d 358 (5th Cir. 1972); *Bizzell v. Hemingway,* 548 F.2d 505, 507 (4th Cir. 1977); the parties' rights and obligations stem from the terms of the plan itself. Here, it is critical that the plan was not fully consummated.[1] Upon default, the plan provided for conversion to Chapter 7. Art. III, ¶ G; Debtor's Amended Plan of Reorganization. With the conversion, the parties were not limited to the provisions of the plan, but were entitled to all rights and protections of Chapter 7.

By agreeing that the plan would convert to a Chapter 7 upon default, the parties implicitly agreed that a subsequent Chapter 7 trustee would be able to recoup any preferential transfers. This is apparent from the different basic purposes of a Chapter 11 and a Chapter 7 case. A Chapter 11 reorganization is premised on the behalf that, where possible, an entity given a chance to realign its affairs, will be worth more to creditors and investors as a going concern. In a Chapter 11, the continued support and cooperation of customers, suppliers, and trade creditors is very important. Without their assistance, reorganization is most difficult. Therefore rarely does a debtor in possession attempt to recover preferences. A Chapter 7 case, on the other hand, is not concerned so much with trade creditors and the cooperation of customers. The goal is to maximize the estate for distribution to creditors. The recovery of preferential transfers is important to insure all creditors share equally in the largest pool of funds. Confirmation of a plan that provides upon default for conversion to Chapter 7 is not res judicata on all issues until the plan is fully consummated. The possibility of preference actions is impliedly recognized and reserved. Therefore, for all the above mentioned reasons, I conclude that the trustee is not barred from bringing these preference actions, and accordingly deny defendants motion for summary judgment.

A further problem is presented by the fact that under the Chapter 11 plan unsecured creditors were paid 25% of their claim.[2] Had these alleged preferential

---

1. Had both payments been made, there would have been satisfaction of all claims, and the parties would be barred by res judicata from trying to relitigate issues that should have been resolved earlier. *See, Miller v. Meinhard-Commercial Corp., supra.* What the parties intended to settle with this plan is not as important, however, as the fact that the settlement aborted. Upon default and conversion, the plan was a nullity.

2. The trustee has not expressed an interest in seeking a return of the payments made under the Chapter 11 plan. It is clear that these payments would not be recoverable as preferences since § 547(b) only gives the trustee

transfers been returned prior to confirmation, an unsecured creditor could have filed a claim for the amount of the payment. As a result, he could have received 25% of the preference returned because of Silver Mills payment under the plan. The issue now raised is whether a preference holder is entitled to a 25% credit for payments he could have received under the Chapter 11 plan. The answer depends on a choice between two competing policy considerations. If the Chapter 11 plan had succeeded, creditors who received a preference would have been better off than creditors who didn't receive a preference. Having gambled on the success of the plan, perhaps they should not complain when the plan fails. On the other hand, however, the overriding goal in bankruptcy is that all creditors of the same class should be treated equally. I find the equal treatment argument to be compelling.

█ While one of the purposes of the Bankruptcy Code is to insure a "fresh start" for debtors, an equally important purpose is to provide for an equitable distribution of the bankrupt's assets among his creditors, *Browy v. Brannon,* 527 F.2d 799, 802 (7th Cir. 1976). Once a petition is filed, creditors of the same class are entitled to equal treatment. Conversion of a case to Chapter 7 does not affect a change in the date of filing. § 348(a). Therefore, if after the date of filing some unsecured creditors received 25% payment, then all unsecured creditors are entitled to a similar distribution. Creditors who receive a payment that is later determined to be a preferential transfer have done nothing that would justify them receiving different post-petition

treatment. Substantial justice, *See, Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939), entitles these defendants to distributions equal to that received by other creditors. Accordingly, those defendants found to have received a preference under § 547(b) are entitled to credit for the payment they would have received under the plan.[3]

The second motion is a motion for consolidated hearings on common issues of fact, brought by the trustee. There are two common issues that could be consolidated: First, whether Silver Mill was insolvent at the time the transfers were made (§ 547(b)(3)), and second, whether defendants received, as a result of these transfers, more than they would have if the proceedings were under Chapter 7. (§ 547(b)(5)). The trustee contends that consolidation would promote efficient and economical administration since the issues are the same, and the same attorneys are involved. Failure to consolidate, it is urged, would lead to unnecessary expense and the possibility of inconsistent decisions. Jury demands have been filed in each of these cases.

█ Bankruptcy Rule 742 makes Federal Rule of Civil Procedure 42 applicable to bankruptcy proceedings. FRCP 42 provides:

(a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

power to avoid transfers made before the date of filing, and the date of filing is not affected by the conversion to Chapter 7. § 348(a). The trustee could not recover under § 549 either, since the post petition payments were authorized by the court.

3. Most defendants found to have received a preferential transfer will be entitled to a 25% credit for the amount of the distribution they would have received under the plan. However, under the plan, creditors who filed a claim for $1,000 or less (Class 6) 'received 100 cents on the dollar, and further provisions was made for larger unsecured creditors (Class 7) to reduce

their claims to $1,000, and be treated as a Class 6 creditor. Since the plan would have ultimately paid $.52 on the dollar, it would have made sense for anyone having a claim of approximately $1,923 or less to have elected to reduce to $1,000. Here, any defendant found *to have received a preferential transfer will be* entitled to reduce his claim, if that option would have been preferable at the time of confirmation. This result is not, in effect, reviving the terms of a null and void plan, but rather ensures that from the time of filing, similarly situated creditors will receive equal treatment.

This rule is permissive and vests purely discretionary power in the court. 5 Moore's Federal Practice ¶ 42.02[1]. The rule sets forth a minimum criteria that there be common issues of law or fact and that consolidation should tend to avoid unnecessary costs or delay.

 In this situation, I find that the best interests of the parties and the most efficient administration of justice require all preference actions with a jury demand be consolidated for purposes of hearing the § 547(b)(3) and § 547(b)(5) issues. These issues are common to all actions and would appear to require the same evidence and proofs. A single jury will be impaneled to hear these common issues. Separate jury trials in each case on every issue would not only lead to the possibility of inconsistent verdicts, but would be an inefficient use of court time. Consolidation would reduce the costs for all concerned. I can foresee no harm to defendants in proceeding in this manner. Even though payments were made to defendants on different dates, a determination could be made whether the debtor was insolvent at the commencement of the 90 days preference period, and if so, whether insolvency continued until the filing of the Chapter 11 proceedings. The defendants will still have their rights to separate jury trials on any other issues, including § 547(c) defenses. Total consolidation of these cases as urged by the defendants in their brief would not be appropriate because some issues, particularly those raised under § 547(c), relate to separate transactions of the defendants.

It would seem appropriate that all preference actions with jury demands be consolidated for hearings on these two issues. The trustee, therefore should notify any other defendants, who have filed jury demands and dispute either the § 547(b)(3) or § 547(b)(5) issue, of this court's order requiring consolidation. If no objections are filed by these additional defendants within ten days of notification, their cases will also be consolidated. With this addition, the trustee's motion for consolidation is granted.