**In re KORVETTES, INC., Delbak Realty Corp., Gretna Realty Corp., Debtors.**

**KORVETTES, INC., Debtors and Debtors in Possession and Official Unsecured Creditors Committee of Korvettes, Inc., et al., Debtors, Plaintiffs,**

**v.**

**SANYO ELECTRIC INC., Defendant.**

**Bankruptcy Nos. 81 B 11410, 81 B 12080 and 81 B 12251.**
**Adv. No. 83–6100 A.**

United States Bankruptcy Court,
S.D. New York.

Aug. 16, 1984.

Booth, Lipton & Lipton by Edgar H. Booth, Cindy S. Korman, New York City, for plaintiff, Official Unsecured Creditors' Committee of Korvettes.

Whitman & Ransom by Jeffrey Oppenheim, New York City, for defendant.

DECISION AND ORDER ON STATUTE OF LIMITATIONS APPLICABLE TO DEBTOR IN POSSESSION'S PREFERENCE ACTION

BURTON R. LIFLAND, Bankruptcy Judge.

The issue before the Court, one of apparent first impression in this district, concerns the motion of defendant Sanyo Electric, Inc. ("Sanyo") to dismiss this Chapter 11 debtor's complaint in which Korvettes, Inc. ("Korvettes") seeks to recover for allegedly voidable preferential transfers received by Sanyo. Sanyo contends that Korvettes' complaint is time-barred in that it was instituted by a reorganized debtor beyond a two-year statute of limitations and therefore fails to state a claim.[1]

On July 16, 1981, Korvettes filed a petition for reorganization under Chapter 11 of

1. At the hearing on this matter, Korvettes withdrew its cross-motion for summary judgment which it had previously filed in response to Sanyo's motion to dismiss the complaint.

the Bankruptcy Code and was continued in possession of its assets and property as a debtor in possession. Korvettes alleges in its complaint that, while insolvent, it transferred property to Sanyo, a seller of consumer products, in the amount of $24,212 on April 24 and 28, 1981, on account of an antecedent debt.[2] On or about November 4, 1981, Sanyo filed a proof of claim in the case for $55,814.17. On December 15, 1982, 17 months into the case, an order was entered confirming Korvettes' plan of reorganization.

By summons and complaint issued November 17, 1983, Korvettes and its Official Unsecured Creditors Committee initiated this adversary proceeding seeking an order: (a) avoiding the alleged preferential payment and directing Sanyo to pay Korvettes the alleged amount of such preference plus interest and the costs of this proceeding; and (b) disallowing Sanyo's claim until Sanyo has repaid the alleged amount of the preference. A hearing on defendants' motion to dismiss the complaint as untimely was held before this Court.

Sanyo argues that this adversary proceeding must be dismissed because the two-year limitations period for bringing Section 547 preference actions contained within Code Section 546(a) applies not only to trustees, but also to debtors in possession like Korvettes. Code Section 546(a) in pertinent part provides:

> An action or proceeding under section ... 547 ... of this title may not be commenced after the earlier of—
>
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and
>
> (2) the time the case is closed or dismissed.

Sanyo continues, asserting that Code Section 1107 grants a debtor in possession all the rights of a trustee in operating the debtor's business. Code Section 1107 provides:

> Subject to any limitations on a trustee under this chapter, ... a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this Chapter.

11 U.S.C. § 1107 (1983).

In further support of its attempt to equate a debtor in possession with a trustee, Sanyo cites to a general statement contained in the legislative history to Section 1107, which declares:

> This section places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a chapter 11 trustee and to such other limitations and conditions as the court prescribes. H.R.Rep. No. 595, 95th Cong., 1st Sess. 404 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6360, S.Rep. No. 989, 95th Cong., 2d Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5902.

Sanyo thus concludes that Korvettes as debtor in possession is time-barred from bringing the instant adversary proceeding.

In contrast, Korvettes and its Official Unsecured Creditors' Committee argue that the Code does not treat debtors in possession as it treats trustees in bringing preference actions. Plaintiffs thus contend that because a trustee has never been appointed in the instant case, Code Section 546(a) has no application and the suit was timely brought. They base their assertion in part on the fact that as part of the order confirming Korvettes' plan of reorganization, the Court retained jurisdiction post-confirmation over all subsequent preference actions like the instant one. They make a further argument the essence of which is that open season for preference actions continues until the case is closed.

2. Sanyo does not appear to contest that Korvettes was insolvent or contend that this transfer falls within any of the exceptions to voidable preferences enumerated within Code Section 547.

Korvettes cites two cases in support of its narrow construction of Code Section 546(a), *One Marketing Co., Inc. v. Addington and Associates*, 17 B.R. 738 (Bankr.S.D.Tex.1982) and *In re Silver Mill Frozen Foods, Inc.*, 23 B.R. 179 (Bankr.W.D.Mich. 1982). In *One Marketing*, the bankruptcy court held that the two-year statute of limitations on preference actions applies to actions brought by Chapter 11 trustees but not to those brought by debtors in possession and that there is no statute limiting as to time a debtor in possession's right to bring a preference action. The court in *One Marketing*, declaring that "[i]n this instance, the legislative history does not shed any light on the subject nor is there any case law on point," opts for what it terms the "plain, unambiguous meaning" of Section 546(a). *Id.* at 739. Quoting the Collier treatise, the court continues:

> The better view is that section 1107(a), which gives the debtor powers of a trustee and subjects the debtor in possession to the limitations placed on a trustee, does not equate service of the debtor in possession with the appointment of a trustee for those purposes of section 546(a). If a trustee is appointed in a case under Chapter 11 or in a case converted from Chapter 11, he will have two years from the date of his appointment to commence actions pursuant to Section 546(a). *Id.* (quoting 4 Collier on Bankruptcy § 546.02[2] at 546–6 through 546–7 (emphasis added). *See also* 2 Collier Bankruptcy Manual ¶ 546.02 (3d ed. 1983) (citing *One Marketing* for this proposition) (15th ed. 1980)).

The court in *Silver Mill*, 23 B.R. 179, reiterated this conclusion in following the holding in *One Marketing*. *Silver Mill* is a Chapter 11 case which was converted to a Chapter 7 case upon the debtor's default in complying with the payment terms embodied in the reorganization plan. The issue before the court was whether the two year period begins to run upon the earlier date of filing of the Chapter 11 case when the debtor in possession came into being or upon the appointment subsequent to conversion of a Chapter 7 trustee. The court decided, based upon the reasoning in *One Marketing* and the above statement in the Collier treatise, that this statute begins to run only upon the appointment of a trustee. Similarly, in *In re Killian Construction*, 24 B.R. 848 (Bankr.D.Idaho 1982), the bankruptcy court held that the fact that an interim trustee has the same powers and performs the same duties as a permanent trustee does not justify dating the statute of limitations from the earlier point in time of the appointment of the interim trustee.

It is the view of this Court that neither of the polar positions espoused by the parties should be adopted. To put forth a *per se* blanket construction, as is advocated by Sanyo, limiting a debtor in possession to two years in which to assert all preference claims would indeed set an inequitable precedent which is in no way required, necessary, or appropriate. Indeed, as the court in *One Marketing, supra,* indicated, there are neither statutory provisions, legislative history, nor cases equating a debtor-in-possession with a trustee for purposes of Code Section 546(a). *See One Marketing*, 17 B.R. at 739.

Such a rigid rule could very well shackle the efforts of the parties to a reorganization case in the already difficult process of developing a consensual plan of reorganization. Presently, if litigated at all, it is generally only at the end of a reorganization case that preference claims will be asserted. These preference actions are not always litigated because they may be dealt with in the disclosure statement or plan of reorganization. *See One Marketing, id.* Such plan documents may settle and compromise the preference issue. If not, these documents generally reserve the debtor's right to bring the action post-confirmation. *See* 3 Collier Bankruptcy Manual ¶ 1142.02 (3d ed. 1983) (discussing a court's continuing jurisdiction post-confirmation to hear actions arising in or related to a Chapter 11 case). The reason for this practice of deferred treatment of preferences has been described as follows:

> [A] debtor in possession in a Chapter 11 case may have mixed emotions about

> proving that it is insolvent ... and, perhaps more to the point, angering the very creditors who may have to vote on the plan of reorganization. The whole subject is one ripe with opportunities for conflicts of interest including the possibility that preferences may have been received by members of the committee.

P. Murphy Creditors' Rights in Bankruptcy § 10.23 (Supp.Dec.1983).

Mr. Murphy then goes on to consider other reasons why preference consideration is deferred until either right before confirmation or post-confirmation:

> The question of preferences may well be a required subject for the disclosure statement unless all available actions have been brought. In a substantial case this is most unlikely since there may well be thousands of actions available. Unsecured and secured creditors should carefully consider their vulnerability to preference actions in Chapter 11 cases before consenting to a plan. A debtor tactic may be to bring a large number of preference actions on the eve of confirmation after the votes have been obtained.

*Id.*

Similarly, the Collier Bankruptcy Practice Guide describes how preferences are generally considered in the preparation of a reorganization plan, in *inter alia,* "adjusting payments to creditors to take such apparent preferences into account." *See* 5 Collier Bankruptcy Practice Guide 90.05[5] at 90–63 through 90–64 (1983). This guide describes how debtors will either seek to obtain each creditor's consent to such an adjustment at the time its acceptance of the plan is solicited or provide for retention of jurisdiction by the bankruptcy court to hear preference actions [timely brought] that relate to those creditors who have not so consented.

Thus, to compel the issue of preferences to be brought to the forefront prematurely in the reorganization process has the potential of impeding progress toward the formulation of a consensual plan and could indeed stall negotiations altogether. Such a blanket construction would thus either compel preference litigation to be brought in the midst of negotiations or compel all reorganizations, no matter the size of the interests or the complexity of the legal and economic issues involved, to be focused upon well in advance of two years from the filing date. In this era where large and complex reorganization cases have proliferated, either eventuality would place undue pressure on the affected parties. This, in turn, would run contrary to the essential goals and philosophy espoused in Code Chapter 11 of fostering the reorganization and avoiding the liquidation of troubled debtors. *See* H.R.Rep. No. 95–989, U.S. Code Cong. & Ad.News 1978, p. 6179, *cited in In re Ponn Realty Trust,* 4 B.R. 226, 230 (Bankr.D.Mass.1980) (declaring that reorganization is more efficient than liquidation because "assets that are used for production in the industry for which they were designed are more valuable than those same assets sold for scrap."); *In re Johns Manville Corp.,* 36 B.R. 727, 9 C.B.C.2d 1179, 1190–91 (Bankr.S.D.N.Y.1984) (citing *Banque de Financement v. First National Bank of Boston,* 568 F.2d 911 (2d Cir. 1977)). *See also In re Coram Graphic Arts,* 11 B.R. 641, 645 (Bankr.E.D.N.Y. 1981).

By a like token, the open-ended solution advocated by Korvettes is inadequate in that absent the appointment of a trustee, creditors may be exposed to the commencement of suits to avoid preferences even after entry of an order of confirmation until the case is closed, whenever that amorphous moment should occur. Such an open-ended interpretation of timeliness is indeed unacceptable to this Court in that its adoption would foment great uncertainty and confusion. This is because the point at which a case is officially "closed" is unclear under the Bankruptcy Code and the Rules of Bankruptcy Procedure.

Code Section 350(a) provides: "After an estate is fully administered and the court has discharged the trustee, the court shall close the case. The phrase "fully administered" is nowhere explained and the Rules

lend no insight into a reasonably precise definition of the exact final moment when a case is officially closed. For example, Bankruptcy Rule 3022 may be read to indicate that a "final decree" must be entered in order for a case to be "closed". However, Bankruptcy Rule 5009 follows the wording of Code Section 350(a) almost exactly in setting down the amorphous point when the case is "fully administered" as the trigger for the closing of the case. Thus, the exact point of case closing is subject to interpretation and administrative activity. *See generally In re Silver Mill,* 23 B.R. at 181 (declaring that "the Code is not very clear on when a Chapter 11 case is closed").

Moreover, under Section 350 and Rule 5009, the final act of administration could very well be a purely ministerial act of which the debtor and other parties would receive no notice. Thus, to have the statute of limitations for bringing preference actions turn on this nebulous concept of case "closing" would clearly be unworkable. In addition, such open-ended interpretation also has great potential for working inequities in obviating all repose that creditors might enjoy were a more definite time period for the bringing of preference actions set down.

There must be some finality to the debtor in possession's ability to bring preference actions in order to afford creditors the repose that Congress must have intended in enacting Code Section 546(a). The Supreme Court in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), articulated that repose is the general policy at the heart of statutes of limitation, declaring:

> Statutes of limitation which 'are found and approved in all systems of enlightened jurisprudence' ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of state claims in time comes to prevail over the right to prosecute them' .... These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*Id.* at 117, 100 S.Ct. at 356–57 (citations omitted).

As there is a statutory ambiguity with no helpful legislative history and no case law precedent in this district, it is necessary to explore the fashioning of a rule of reason so as to assure an equitable and logical interpretation of the applicability or nonapplicability of Code Section 546 to debtors in possession. It is well-established that when Congress has not delineated a specific limitations period for a federal cause of action, the federal courts are to apply the appropriate state limitations period. *See Board of Regents of the University of the State of New York, et al v. Tomanio,* 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); *Robertson v. Wegmann,* 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *U.A.W. v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–704, 86 S.Ct. 1107, 1111–1113, 16 L.Ed.2d 192 (1966); *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). However, the United States Supreme Court has fashioned an exception to the implementation of state-created limitation periods when these periods would contravene the purpose underlying the federal statutes at issue. As the United States Supreme Court declared:

> [T]he Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frus-

trate or interfere with the implementation of national policies. 'Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide.' *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977) (quoting *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975)).

Although the term "core bankruptcy matter" in contradistinction to "state-related cause of action" has been recently engrafted onto the description of preferences,[3] there is no federal statute of limitations that clearly applies to limit the bringing of preference actions by nontrustee eligibles. In the absence of such a federal statute, this court should initially look to the operative limitations provision under the law of the State of New York. In looking to New York law, this action on a preference claim would not fall under any specific statute of limitations. Therefore, it would be relegated to limitation pursuant to New York's six-year omnibus statute of limitations. *See N.Y. C.P.L.R.* § 213.[4]

However, it is abundantly clear that this six-year limitations period should not control in this instance in that it bears no logical relationship to any aspect of the pursuit of a preference action. In this instance, the state-created limitations period does not in any manner further the intent behind limitations periods in that it does not impose an appropriate end to litigation so as to foster repose in the creditor body. It is inconceivable that a six-year period would accommodate the federal purposes underlying and considerations attendant to the bringing of preference actions. This limitations period was, rather, solely intended as a general catch-all rule of repose for state actions. It is specifically applied within state law in equitable cases for which no other limitation has been legislated. *See, e.g., Singleton v. City of New York,* 632 F.2d 185, 190 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Here, its implementation would frustrate the essential Code policy described above of allowing preference actions to be brought in the context of a reorganization case at a time they should logically be brought, at or near the end of the reorganizational aspects of the case. Accordingly, a period of limitations of six years, where confirmation will almost uniformly be accomplished far earlier, must have no bearing on this case.[5]

It is thus my view that the longer of confirmation or two years from the reorganization filing date should be the appropriate period for the bringing of preference actions for statute of limitations purposes. Stated differently, a debtor in possession

3. The newly enacted Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the Act") provides that preference actions are "core bankruptcy matters," not related matters involving determinations of state law. *See* 28 U.S.C. § 157(b)(2)(F) of the Act. This provision, declaring preference actions core matters, went into effect immediately upon this Act's enactment. *See* § 122(a) of the Act. However, the substantive revisions of the Bankruptcy Code, contained in Title III of the Act, including those involved in the instant case, generally will only become effective to cases filed 90 days after the date of enactment of the Act. *See* § 553(a) of the Act.

4. New York CPLR § 213 provides in pertinent part: "The following actions must be commenced within six years: 1. an action for which no limitation is specifically prescribed by law; ..." *N.Y. C.P.L.R.* § 213.

5. The Supreme Court has upheld the imposition of judicial interpretation similar to that announced herein when Congress has left gaps in federal law. As that Court stated:

> [T]he inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts. 'At the very least, Constitutionalism requires effective recognition of power in the federal courts to declare, as a matter of common law or 'judicial legislation,' rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns, enacted in the large by Congress.'

*United States v. Little Lake Misere Land Company, Inc.,* 412 U.S. 580, 593, 93 S.Ct. 2389, 2397, 37 L.Ed.2d 187 (1973); (quoting Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797, 800 (1957)).

should be able to bring preference actions until a reorganization case is confirmed, no matter how long that process naturally takes. If, however, a case is confirmed in less than two years, the debtor may bring these actions until the two-year period has elapsed, so long as it has provided in the confirmation documents that preference actions may be brought post-confirmation. A formulation crafted in the alternative is indeed proper as the statute of limitations under former Bankruptcy Act Section 11(e) was constructed in this manner. Pursuant to Act Section 11(e), a trustee could bring preference actions for the longer of two years from the date of the bankrupt's adjudication in bankruptcy or any applicable federal or state statute of limitations, so long as that federal or state statute had not expired before the adjudication. *See* 1A Collier on Bankruptcy ¶ 11.13 (14th ed. 1978). *A fortiori*, the Chapter 11 debtor in possession should be able to bring preference actions for the longer of two years from the date of the filing of a Chapter 11 petition or entry of an order of confirmation.

Moreover, this formulation will avoid the strictures that would be engrafted onto the reorganization process if the debtor in possession were rigidly limited to two years from the filing date. In addition, this formulation accomplishes the appropriate degree of finality necessary to assure the repose that was most likely implicitly envisioned by the drafters of Code Section 546(a) and described by the United States Supreme Court in *Kubrick, supra.*

Confirmation is a most appropriate cleavage date because it should afford the parties ample opportunity to work out all of their differences, including the question of preference, prior to litigating the preference issue. Indeed, the court in *One Marketing* declared: "Under a Chapter 11 proceeding, any problems with preferential transfers can be dealt with in the disclosure statement or plan of reorganization, or both. It is not always necessary that preference problems be litigated." *One Marketing,* 17 B.R. at 739. The court in *One Marketing* sought to distinguish this situation from that of liquidation where "[i]t is incumbent upon the trustee to promptly reduce all of the debtor's assets to allow distribution to creditors." *Id. See also* P. Murphy, Creditors' Rights in Bankruptcy ¶ 10.23 *supra;* 5 Collier Bankruptcy Guide ¶ 90.05, *supra.* And, preference actions can still properly be brought post-confirmation in the instances where confirmation occurs within two years of the filing date. *See In re Silver Mill,* 23 B.R. at 181, (where the court held that a case is not closed upon confirmation); 3 Collier Bankruptcy Practice Manual ¶ 1142.02, *supra.*

In addition, this formulation fosters the same policy goals as does the doctrine of laches in that both are equitable notions by which repose is achieved by discouraging parties from sleeping on their rights. The Supreme Court has elucidated the principle of laches, declaring:

> The doctrine of laches is based upon grounds of public policy, which requires for the peace of society the discouragement of stale demands; ... a court of equity will not aid a party whose application is thus destitute of conscience, good faith, and reasonable diligence.

*Mackall v. Casilear,* 137 U.S. 556, 566, 11 S.Ct. 178, 181, 34 L.Ed. 776 (1890) (Citations omitted).

Thus, the balancing of equities undertaken in formulating this Court's rule of reason in balancing the need for repose among creditors against the goal of providing an appropriate time period for the bringing of preference actions is the same mode of analysis as that invoked in applying the doctrine of laches. *See Penn. Mut. Life Ins. Co. v. City of Austin,* 168 U.S. 685, 686, 18 S.Ct. 223, 223–24, 42 L.Ed. 626 (1898); *Hammond v. Hopkins,* 143 U.S. 224, 250, 12 S.Ct. 418, 426, 36 L.Ed. 134 (1892); *Speidel v. Henrici,* 120 U.S. 377, 387, 7 S.Ct. 610, 612, 30 L.Ed. 718 (1887); *D.O. Haynes & Co. v. Druggists' Circular,* 32 F.2d 215, 217 (2d Cir.1929). *See also Czaplicki v. The Hoegh Silvercloud,* 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956); *Garnder v. Panama R. Co.,*

342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951); *DeSilvio v. Prudential Lines Inc.*, 701 F.2d 13, 15 (2d Cir.1983); *Public Administrator of the County of New York v. Angela Naviera, S.A.*, 592 F.2d 58, 63 (2d Cir.), *cert. dismissed*, 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979).

In any event, it is clear that laches may be used to justify the particular result reached in the instant case of barring Korvettes preference claim. This is because Korvettes clearly could have brought this preference claim at the time of confirmation of its announced reorganization plan or thereafter, until two years from the filing date had elapsed. In failing to do so, Korvettes has sat on its rights without any asserted justification to the detriment of the repose of its creditors. Accordingly, Korvettes should equitably be barred from bringing the instant action.

## CONCLUSION

In the instant case, the debtor confirmed a plan of reorganization within two years of the filing date. Under the formulation announced herein as well as the equitable doctrine of laches, the debtor was properly able to bring the preference action at bar up until two years from the filing date, or until July 16, 1983. Indeed, the order of confirmation here specifically authorized post confirmation preference suits. Because the instant preference action was not brought until November 17, 1983, it is time barred. Accordingly, Sanyo's motion to dismiss the debtor's complaint is granted.

It is SO ORDERED.