### In re ALITHOCHROME CORPORATION, Debtor.

### ALITHOCHROME CORPORATION, Plaintiff,

### v.

### EAST COAST FINISHING SALES CORPORATION, Defendant.

**Bankruptcy No. 82 B 1003 (TLB).**
**Adv. No. 84–5443A.**

United States Bankruptcy Court, S.D. New York.

Oct. 18, 1985.

Samuel A. Bloom, New York City, for defendant.

Stroock & Stroock & Lavan, by Alan Kolod, Barbara G. Kaplan, Paul E. Breene, New York City, for debtor in possession.

### OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT ON THE PLEADINGS

TINA L. BROZMAN, Bankruptcy Judge.

On February 23, 1982, Alithochrome Corporation ("Alithochrome") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and continued as debtor in possession. More than two years later, on March 26, 1984, Alithochrome instituted this adversary proceeding against East Coast Finishing Sales Corporation ("East Coast") seeking, pursuant to Section 547 of the Bankruptcy Code, to avoid as preferential a transfer of $5,550 [1] to East Coast. Both parties have moved for summary judgment and East Coast further seeks judgment on the pleadings pursuant to F.R.C.P. 12(c).

The undisputed facts are as follows. Alithochrome attempted an out-of-court settlement with its creditors. In furtherance of that goal, it entered into a repayment plan (the "Plan") with certain creditors on July 31, 1981. Thereafter, East Coast, which

---

1. The complaint alleges that the amount of the transfer was $5,550, but the parties' motion papers consistently use $5,500.

was not a party to the Plan, obtained a $37,199.09 judgment against Alithochrome in Bergen County, New Jersey, Superior Court. On November 19, 1981 the parties entered into a stipulation (the "Stipulation") in which East Coast agreed to suspend execution of the judgment in return for Alithochrome's promise to repay the debt according to an agreement (the "Agreement") which was similar to the Plan. The Agreement made East Coast a Plan participant and gave East Coast a host of rights including the right to immediate payment of $7,700 from Alithochrome; a pro-rata share in a percentage of Alithochrome's cash flow; interest on the outstanding debt and a $5,550 security interest in the proceeds of the sale of a press (the "Press"). The Agreement reads in pertinent part:

"3. In addition, the Company [Alithochrome] agrees to pay fifteen percent [$5,550] of the amount of the outstanding balance due and owing to us [East Coast] by the Company as set forth under our signature on the last page hereof, forthwith upon the sale of the Press, as hereinafter described from the proceeds of the sale of a 4 Unit Gross Commercial 23—9/16″ x 38″ web offset press ("Press") currently being offered for sale. In order to secure our position in such proceeds, the Company will obtain a release from its secured lenders of any security interest they may have in the proceeds of the sale of the Press over $250,000 and the Company will arrange to provide us with documentation evidencing our security interest, as set forth in this Paragraph 3, in the proceeds of the sale of the press exceeding $250,-000 in an amount equal to fifteen percent of the amount of the outstanding balance due and owing to us by the Company as set forth under our signature on the last page hereof. Upon the sale of the press, the Company will place the amount of the proceeds of such sale which equals fifteen percent of the amount of the outstanding balance due and owing to us in a separate account which shall not be commingled with any other funds of the company and promptly, upon clearance of the purchase paid, pay us the said sum. * * *

7. This Agreement shall be deemed to be cancelled in the event the Company seeks the protection of any federal reorganization or bankruptcy statute or involuntarily becomes subject to any federal reorganization or bankruptcy statute; provided, however, that our security interest in the proceeds of the sale of the Press, as described in Paragraph 3 above, shall survive cancellation of this Agreement and shall be valid and enforceable to the extent allowed by law." * * *

Alithochrome asserts, and East Coast does not deny, that the Press was sold in early December 1981 and the proceeds deposited in Alithochrome's bank account. On December 10, 1981 Alithochrome wrote East Coast a check for $5,550 in keeping with the terms of the Agreement. It is this payment which Alithochrome now seeks to recover.

East Coast raised four separate defenses in its amended answer: first, that Alithochrome is estopped from avoiding the transfer because Alithochrome induced East Coast to enter into the Agreement; second, that the transfer was a contemporaneous exchange for new value and is therefore exempt from avoidance by Section 547(c)(1); third, that the transfer was made from a trust created outside the statutory period; and fourth, that the proceeding is time barred by the statute of limitations found in Section 546(a)(1) of the Code.

I.

East Coast moves for judgment on the pleadings pursuant to Rule 12(c) on the grounds that the proceedings are time barred. East Coast maintains that Alithochrome's preference action is barred either by the two year statute of limitations contained in Section 546(a) or by the equitable doctrine of laches. Neither argument has merit.

Section 546(a) states that a trustee may not commence an action to avoid a preferential transfer more than two years after the appointment of a trustee. Whereas section 1107(a) [2] gives the debtor in possession in a Chapter 11 case the same power of avoidance as a trustee and whereas more than two years concededly elapsed between the time Alithochrome sought the protection of the court and the date it initiated this preference action, Alithochrome properly argues that that two year statute of limitations does not apply to preference actions brought by a Chapter 11 debtor in possession. *In re Korvettes, Inc.*, 42 B.R. 217, 218, 12 B.C.D. 117, 118 (Bankr.S.D.N.Y.1984); *In re Silver Mill Frozen Foods, Inc.*, 23 B.R. 179, 181 (Bankr.W.D.Mich. 1982); *One Marketing Co. Inc. v. Addington & Associates*, 17 B.R. 738, 739 (Bankr. S.D.Tex.1982). "The better view is that section 1107(a), which gives the debtor powers of a trustee and subjects the debtor in possession to the limitations placed on a trustee, does not equate service of the debtor in possession with the appointment of a trustee for those purposes of Section 546(a)." 4 Collier, *Bankruptcy* § 546.0[2] (15th ed. 1980). Thus, the two year statute of limitations is no bar to Alithochrome's action.

East Coast contends nonetheless that, if not barred, Alithochrome is guilty of laches because it neither filed a plan of reorganization nor commenced a preference action for over two years after filing for reorganization. In *Korvettes, supra,* Judge Lifland of this District determined that although the statute of limitations in Section 546(a) does not apply to preference actions commenced by a Chapter 11 debtor in possession, in order to afford creditors the repose that Congress must have intended in enacting Code Section 546(a), there must be some finality to the ability of the debtor in possession to bring preference actions. 42 B.R. at 219, 12 B.C.D. at 119.

The court fashioned an equitable rule intended to give the parties ample opportunity to agree on a plan of reorganization while also providing the degree of finality necessary to assure that repose. *Id.* The court held that the debtor in possession may bring preference actions for the longer of two years from the date of filing of a Chapter 11 petition or entry of an order of confirmation. *Id.*, 42 B.R. at 223, 12 B.C.D. at 121. In the instant case, no order of confirmation had been entered at the time Alithochrome instituted this action. Therefore even under the equitable rule devised in *Korvettes* to limit the ability of a debtor in possession to recover preferences, this adversary proceeding is timely. Moreover East Coast has failed to demonstrate that Alithochrome sat on its rights without justification to the detriment of its creditors. Although equity will not aid a party whose application is destitute of reasonable diligence, *Mackall v. Casilear*, 137 U.S. 556, 566, 11 S.Ct. 178, 181, 34 L.Ed. 776 (1890), there has been no showing here that such diligence is lacking. Accordingly, the motion is denied.

II.

The trustee or debtor in possession bears the burden of proving by a preponderance of the evidence each element of the asserted preference. *In re Casco Electric Corp.*, 28 B.R. 191, 195 (Bankr.E.D.N.Y. 1983); *In re Vasu Fabrics, Inc.*, 39 B.R. 513, 515 (Bankr.S.D.N.Y.1984); Section 547(g).[3]

Those elements are set forth in Section 547(b), which reads as follows:

(b) Except as provided in subsection (c) of this section, the trustee may void any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owned by the debtor before such transfer was made:

---

2. The debtor in possession is vested by virtue of section 1107(a) with the trustee's power of avoidance under section 547.

3. § 547(g) reads: For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section.

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of petition; or

(B) between 90 days and one year before the date of filing of the petition, if such creditor, at the time of such transfer

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The central inquiry in this case is whether the interest transferred to East Coast was indeed property of the debtor. East Coast argues that Alithochrome created an express trust for the benefit of its creditors, transferring all but bare legal title to the Press to its creditors on July 31, 1981 and that East Coast became a beneficiary on November 19, 1981, outside the ninety day preference period. The import is that even though the check was written within the ninety day period, since the proceeds were no longer the property of the debtor, payment therefrom was not preferential.

■ The debtor's estate consists of all of the legal and equitable interests in property which the debtor had as of the commencement of the case. Section 541(a). When the debtor holds only legal title, the estate does not acquire any equitable interest in property. Section 541(d); 4 Collier,

*Bankruptcy* ¶ 541 (15th ed. 1980). Hence, had East Coast proven, which it has not, that the proceeds were actually placed in trust outside of the statutory period, Alithochrome's action would have to fail.

■ The essential relationship between Alithochrome and East Coast is that of debtor and creditor. Although debtor and creditor may effect a novation to discharge the debt and create a trust, Restatement (Second) Trusts § 12 comment n. at 42 (1959), a debt is not a trust, *id.* § 12. The four essential elements of a valid trust of personal property are: a designated beneficiary, a designated trustee other than the beneficiary, property sufficiently designated to allow title to pass to the trustee and the actual delivery of the property or of a legal assignment thereof with the intention of passing legal title to the trustee. *Brown v. Spohr,* 180 N.Y. 201, 209, 73 N.E. 14 (1904).

■ Unless the settlor expressly declares a trust, or the circumstances clearly indicate that a trust was intended, no trust arises.[4] *In re Gagliardi,* 55 N.Y.2d 109, 115, 447 N.Y.S.2d 902, 432 N.E.2d 774 (1982); *Beaver v. Beaver,* 117 N.Y. 421, 428, 22 N.E. 940 (1889); *State v. Atlantic City Electric Co.,* 23 N.J. 259, 128 A.2d 861, 865 (1957); *State v. United States Steel Co.,* 12 N.J. 51, 95 A.2d 740, 741, 744 (Sup.Ct.N.J.1953). The mere intention to create a trust *in futuro* would be insufficient as a matter of law to create a trust and save the transfer from avoidance for a "manifestation of intention to create a trust intervivos at some time subsequent to the time of the manifestation does not create a trust." Restatement (Second) Trusts § 26 (1959); *see Riegel v. Central Hanover Bank and Trust Co.,* 266 A.D. 586, 42 N.Y.S.2d 657, 660 (1st Dep't 1943); *Farmers' Loan & Trust Co. v. Winthrop,* 207

---

**4.** Without discussing whether the law of New York or of New Jersey controls, Alithochrome cites to New York cases and East Coast, to New Jersey ones. Since the requirements for a valid trust do not differ in New York and New Jersey, it is unnecessary to determine whose law applies. Indeed, the New Jersey courts cite seminal New York cases concerning the requisites for the creation of a trust. *See, e.g., State v. United States Steel Co.,* 12 N.J. 51; 95 A.2d 740, 741, 744 (Sup.Ct.1953) citing *Brown v. Spohr,* a New York Court of Appeals case cited in the text above.

A.D. 356, 202 N.Y.S. 456, 463 (1st Dep't 1923), *mod.* 238 N.Y. 477, 144 N.E. 686 (1924). Where the settlor makes a legally enforceable promise to create a trust inter-vivos at some time in the future, a trust arises at the time of the delivery in escrow. Restatement (Second) Trusts § 32 comment d; § 26 comment in illustration 2.

▪ It is impossible from the contract presented to the court to ascertain intent. The contractual language is susceptible of three possible constructions: the parties intended to simply create a security interest; they intended to create a present trust; or they intended to create a trust intervivos at some time in the future. Pursuant to § 1–201(37) of the Uniform Commercial Code,[5] a "security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. Whereas styled as granting a security interest, the contractual language makes it clear that the $5,550 is to be paid out of the very proceeds constituting the security, not the usual arrangement when security is granted. Given the agreement to place the proceeds in escrow, it may well be that the parties intended to effect an assignment of the proceeds with the intention of passing legal title to the trustee such that a trust was created. Moreover, Alithochrome has submitted to the court only the affidavit of its bankruptcy counsel who has no knowledge of the parties' intentions. East Coast has submitted the certification of its counsel who represented it in the negotiation of the agreement but the certification is utterly silent as to the intention of the parties. Accordingly, based upon the submissions to the court it is impossible to ascertain the intent behind the ambiguous language and, therefore, to draw any conclusion as to the rights granted in the contract.

▪ The Second Circuit very recently in *Bank of America National Trust and Savings Association v. Gillaizeau,* 766 F.2d 709 (2d Cir.1985) reversed the district court's grant of summary judgment because of the possible differing interpreta-tions of a series of letters. The court reaffirmed that where contract language is ambiguous the differing interpretations of the contract present a triable issue of fact and summary judgment is inappropriate, even though both parties have moved for it (at 715) citing *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985); *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983). Cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed. *Heyman v. Commerce and Industry Insurance Company,* 524 F.2d 1317, 1320 (2d Cir.1975) quoting 6 J. Moore, *Federal Practice* ¶ 56.13 at 2247. Since the parties' intention is material to a resolution of the question of whether the property transferred belongs to the estate, both motions for summary judgment must be denied.

Rule 56(d) of the Federal Rules of Civil Procedure ("F.R.C.P.") mandates that upon denial of all or a part of a motion for summary judgment, the court shall if practicable ascertain what material facts exist without substantial controversy and shall make an order specifying such facts. Thus, we turn to the balance of the elements necessary to prove a preference and the defenses alleged by East Coast.

The second element for a preference is that the transfer occurred during the ninety day period before filing. Section 547(b)(4)(A). Determination of this element is bound up with a determination of whether the agreement created a mere security interest or a trust, for if the former were created, a transfer of the debtor's property would have occurred when the check was tendered or paid, well within the preference period. If a trust were created outside the preference period, no transfer of the debtor's property would have occurred at all. And if a trust were created during the preference period, by delivery of the proceeds into escrow, the creation of the trust

---

**5.** The New Jersey and New York Uniform Com-mercial Codes are identical in this regard.

itself would be a transfer probably avoidable by Alithochrome.

The third element for proof of a preference is a transfer to or for the benefit of a creditor. Section 547(b)(1). The term "creditor," as defined in Section 101(9)(A), includes an entity that has a claim against the debtor arising before the order for relief. East Coast had not only a claim but also a judgment against Alithochrome before the debtor filed for reorganization, thereby satisfying this requisite.

The fourth element for proof of a preference is that the transfer was made on account of an antecedent debt. § 547(b)(2). Alithochrome asserts, and East Coast does not deny, that the transfer was made in partial satisfaction of a debt which was evidenced by a judgment against Alithochrome.

■ The fifth element for proof of a preference is a showing that the debtor was insolvent at the time of the transfer § 547(b)(3). Alithochrome did not introduce evidence to support its allegation that the debtor was insolvent, relying instead on the presumption of insolvency in the 90 days before filing. Section 547(f).[6] The presumption does not shift the burden of proof, but merely allocates to the creditor the burden of going forward. 4 Collier, *Bankruptcy* ¶ 547.26 at 109. Alithochrome need not present evidence of insolvency unless the defendant comes forward with some evidence to rebut the presumption. Rule 301 Federal Rules of Evidence. On a motion for summary judgment the presumption has the same effect it would otherwise have. 6J Moore, *Federal Practice,* ¶ 56.11[10] at 56–299 (2d ed. 1985).

■ East Coast in its answer denied Alithochrome's insolvency but failed to introduce any evidence which would rebut the presumption. A party opposing a motion for summary judgment cannot create a dispute as to a material fact asserted in an affidavit by the moving party simply by

relying on a contrary allegation in a well-pleaded answer. *Adickes v. S.H. Kress and Company,* 398 U.S. 144, 160 at n. 20, 90 S.Ct. 1598, 1609 at n. 20, 26 L.Ed.2d 142 (1970). The very mission of the summary judgment motion is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. Advisory Committee Note on 1963 Amendment to subdivision (e) of Rule 56. The defendant's general denial of insolvency in the amended answer is inadequate to rebut the plaintiff's allegation that the debtor was insolvent. Therefore, Alithochrome enjoys the benefit of the presumption and no dispute exists. *See In re Emerald Oil Co.* 695 F.2d 833, 838 (5th Cir.1983).

■ The final element for proof of a preference is that the transfer enabled the creditor to receive more than it would have if the case were in Chapter 7, the transfer had not been made and the creditor had received payment to the extent provided by the Code. § 547(b)(5). Alithochrome alleged that the transfer enabled East Coast to receive more than it otherwise would in liquidation. East Coast did not deny that allegation in its answer. An allegation of the complaint which is not denied in the answer is deemed admitted. Rule 8(d), Federal Rules of Civil Procedure. Nor does the record contain any evidence to the contrary.

■ It remains only to review two affirmative defenses which East Coast raised in its amended answer, neither of which was addressed in the parties' motions for summary judgment. East Coast contends that, even if preferential, the transfer is exempt from avoidance because it was a contemporaneous exchange for new value. East Coast bears the burden of proving each element of the Section 547(c) defense. *In re Independent Clearing House Co.,* 41 B.R. 985, 1014 (Bankr.D.Utah 1984). Section 547(c)(1).[7] Under this theory, East

---

6. § 547(f) reads: for the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

7. The subsection provides (c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

913

Coast's forbearance from enforcing its judgment constituted "new value." But the applicable definition of "new value" specifically excludes "an obligation substituted for an existing obligation." Section 547(a)(2).[8] Thus, forbearance from repossessing a rented car is not new value because it does not enhance or preserve the value of the estate, *In re Duffy*, 3 B.R. 263, 1 C.B.C. 641 (Bankr.S.D.N.Y.1980), and a lessor's forbearance from exercising its rights under a lease does not constitute new value. *In the Matter of Lario*, 36 B.R. 582 (Bankr.D.Ohio 1983). Similarly, East Coast's forbearance from enforcing the judgment is not new value for purposes of Section 547(c). Thus, this defense is unavailable to East Coast to defeat avoidance if Alithochrome ultimately proves that the transfer was preferential.

The last defense advanced by East Coast, that Alithochrome should be estopped from recovery because it induced East Coast to enter into the workout, merits little discussion. Although not cast in these terms, the estoppel which East Coast urges is promissory estoppel which has been described as:

> A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise....

Restatement, Contracts 2d § 90 at 242 (1979). The doctrine, assuming for the sake of argument its applicability, would nonetheless be unavailing to East Coast because, in fact, Alithochrome gave the performance which it promised. Further, since absent bankruptcy there is nothing improper making payments to creditors which are avoidable as preferences only if

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

**8.** The term is defined as follows: (2) "new value" means money or money's worth in goods,

bankruptcy ensues, 4 Collier, *Bankruptcy*, ¶ 547.01 (15th ed. 1985), it is not appropriate to hold that the debtor was estopped from bringing this cause of action just because it induced East Coast to accept the transfer. To so hold would be to undermine seriously the aim of equality of distribution to creditors which pervades the administration of bankruptcy. *Cunard Steamship Company Limited v. Salen Reefer Services AB*, 773 F.2d 452, 459 (2d Cir.1985).

CONCLUSION

The motion to dismiss and the motions for summary judgment are denied. Based upon the foregoing, it is clear that as a matter of law, if the transfer was a transfer of the debtor's property, East Coast's defenses and affirmative defenses will not save the transfer from avoidance.

IT IS SO ORDERED.

services, or new creditor, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation.