**In re JET FLORIDA SYSTEM, INC.,**
**f/k/a Air Florida System,**
**Inc., Debtor.**

**In re AIRPORT SYSTEMS, INC., f/k/a**
**Air Florida, Inc., Debtor.**

**JET FLORIDA, INC., Plaintiff,**

**v.**

**AMERICAN AIRLINES, INC.,**
**Defendant.**

**Bankruptcy No. 84–01223–BKC–SMW.**
**Adv. No. 87–0105–BKC–SMW–A.**

United States Bankruptcy Court,
S.D. Florida.

May 14, 1987.

See also, Bkrtcy., 69 B.R. 83, Bkrtcy., 49 B.R. 321, Bkrtcy., 48 B.R. 440, Bkrtcy., 48 B.R. 437.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This adversary proceeding was tried by the Court on March 31, 1987. The Court having heard the testimony, examined the evidence, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law.

This is a preference action brought by Jet Florida, Inc. ("Jet Florida"), the reorganized successor to the debtor Air Florida, Inc. ("Air Florida") under 11 U.S.C. § 547 to avoid, and under 11 U.S.C. § 550 to recover, a transfer made by Air Florida, to or for the benefit of American Airlines, Inc. ("American") on June 26, 1984, in the amount of $375,297.00, less an amount of $153,378.00 paid by American to Air Florida on June 28, 1984, for a net preferential transfer of $221,919.00.

## I. JET FLORIDA'S PRIMA FACIE CASE

The transfers at issue here were made as part of a settlement process under which Air Florida and American cleared their mutual debts against one another through the Airlines Clearing House, Inc. ("ACH"). Under ACH agreements to which Air Florida and American were parties, ACH acted as agent for both airlines in reconciling and settling debts. .

During March 1984, Air Florida incurred aggregate net debt to other airlines clearing through ACH which was due to be paid under ACH rules on April 30, 1984 as part of Air Florida's routine transfer of claims against other airlines and cash. That debt was not timely paid because Air Florida did not have the money. During April 1984, Air Florida incurred additional aggregate net debt to other airlines clearing through ACH which was due to be paid under ACH rules on May 28, 1984 as part of Air Florida's routine transfer of claims against oth-

John K. Olson, Miami, Fla., for Jet Florida, Inc.

Joseph A. Gassen, Stroock & Stroock & Lavan, Miami, Fla., for American Airlines, Inc.

er airlines and cash. That debt was likewise not timely paid because Air Florida did not have the money.

As a result of its second successive default in transfers and payments to other airlines through ACH, Air Florida was expelled from ACH on May 29, 1984. After negotiating a loan from General Electric Credit Corporation over the Memorial Day weekend, Air Florida entered into a new special agreement with ACH on May 31, 1984, and paid sufficient funds into ACH on May 31, 1984 to pay in full all amounts due for the March and April 1984 transactions.

During May 1984, Air Florida incurred $375,297.00 in debt to American. Under normal ACH rules, that amount was due to be paid to American as part of Air Florida's routine transfer of claims against other airlines and cash, including a net payment into ACH of $1,572,450.00, due June 28, 1984. However, because of the special restrictions imposed by ACH on Air Florida under the May 31, 1984 agreement, Air Florida was obliged to transfer its claims and pay the $1,572,450.00 into ACH on June 26, 1984, and it did so on that date. The Air Florida bankruptcy petition was filed one week later.

In the aggregate, Air Florida satisfied antecedent obligations to American of $375,297.00 as a result of the transfer and payment made to ACH on June 26, 1984. The transfer of accounts receivable or choses in action as was undertaken by Air Florida here has long been recognized as giving rise to a recoverable preference. *National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912). The transfers made here were all on account of antecedent debt.

No evidence was presented to rebut the statutory presumption under 11 U.S.C. § 547(f) that Air Florida was insolvent throughout the 90 day period prior to its July 3, 1984 filing under Chapter 11. Jet Florida established through unrebutted testimony that American would have received nothing in a chapter 7 liquidation of Air Florida had (a) such a proceeding been filed on July 3, 1984, (b) the transfer of June 26, 1984 not been made and (c) American been obliged to look to payment under Title 11 distribution schemes. Accordingly, each of the affirmative elements of 11 U.S.C. § 547(b) was established by Jet Florida at trial.

### II. THE ROLE OF ACH

Both Air Florida and American agreed contractually to settle their interline debts through ACH. ACH was an agent in the settlement process. In paying ACH and agreeing to settle its claims against American, Air Florida "transferred" property to ACH for the benefit of American. It is clear under 11 U.S.C. § 101(41) of the Bankruptcy Code in effect with respect to the Air Florida bankruptcy, now 11 U.S.C. § 101(48), that "transfers" include indirect dispositions of property and interest in property. This is consistent with well-established law. As stated in *National Bank of Newport vs. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912):

> "To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another, for his benefit. If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it."

Simply stated, transfers made by Air Florida for the benefit of American through their mutual agent, ACH, are avoidable under 11 U.S.C. § 547 and recoverable under 11 U.S.C. § 550(a) just as if they had been made directly to American. *In re Blanton Smith Corp.*, 37 B.R. 303 (Bkcy.M.D.Tenn.1984). American has asserted as a defense that the indebtedness paid here was in fact indebtedness of Air Florida to ACH. ACH's role in the settlement of interline accounts among airlines has been determined to be that of a "mere conduit," *Jet Florida, Inc. v. Airlines Clearing House, Inc.*, 69 B.R. 83 (Bkcy.S.D. Fla.1987), akin to the roles of a bank

receiving funds for its customer, *In re Colombian Coffee Co., Inc.*, 59 B.R. 643, CCH Bankr.L.Rep. ¶ 71,121 (Bkcy.S.D.Fla.1986), or a lawyer receiving funds for his client, *In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334 (Bkcy.S.D.N.Y.1983). American introduced no evidence which would show that ACH's role in the settlement process was other than that of a mere conduit. Accordingly, American was, in fact, the initial transferee of the preferential transfer under 11 U.S.C. § 550(a).

## III. AMERICAN'S CONTEMPORANE-OUS EXCHANGE FOR NEW VALUE DEFENSE

American claims, because its debt to Air Florida was settled at the same time as Air Florida's debt to American, that the contemporaneous settlements constituted a "contemporaneous exchange for new value" within the meaning of 11 U.S.C. § 547(c)(1).

■ Jet Florida has conceded throughout this litigation that American is able to offset as new value (either contemporaneous or subsequent) the $153,378.00 it paid Air Florida against the $375,297.00 Air Florida paid American, leaving a net balance of $221,919.00. American introduced no evidence of any additional amounts paid as new value.

■ American has also argued that Air Florida's readmission to ACH on May 31, 1984 and its continuity of membership in ACH constituted "new value." However, American offered no evidence which supports its assertion that continued membership in ACH was of value to Air Florida in the seven days between June 26, 1984, the payment date, and July 3, 1984, the day Air Florida filed its bankruptcy petition. American established that participation by an airline in the Airline Reporting Corporation ("ARC") was important to travel agents, but presented no evidence of the relationship, if any, between ARC and ACH. American further presented no credible evidence as to the benefit to Air Florida in economic terms of its membership in ACH during the relevant seven-day

period. Had Air Florida not made the payment to ACH for the benefit of American and other airlines, it would have had more than $1,500,000.00 in additional cash on hand, an amount which would have been of enormously greater value to Air Florida than the illusory value of another week's membership in ACH.

## IV. AMERICAN'S ORDINARY COURSE OF BUSINESS DEFENSE

American has asserted a defense under 11 U.S.C. § 547(c)(2), which requires it to establish, *inter alia*, that the transfers from Air Florida to American were "(B) made not later than 45 days after such debt was incurred; (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (D) made according to ordinary business terms."

■ Under the ACH rules, payments due ACH as agent for the various airlines are due on the 28th of each month, or on the first business day thereafter. The "ordinary course of business" thus contemplated a payment by Air Florida to American through ACH on June 28, 1984. Air Florida in fact paid on June 26, 1984 under the terms of its special and unique agreement of May 31, 1984. This difference in payment dates is significant given the amounts involved and Air Florida's financial condition.

American contends that the May 31, 1984 agreement gave rise to a new "ordinary course of business" applicable to Air Florida. For that proposition, it introduced in evidence amended ACH rules adopted *after* the relevant period, almost all of the pages of which bear an effective date of December 1, 1986, some two and one-half years after the fact. It can hardly be said that rules adopted two and one-half years later demonstrate that a new "ordinary course of business" came into being in May and June of 1984.

■ Moreover, American presented no evidence whatever as to what portion of Air Florida's May 1984 debt to American of

$375,297.00 was incurred within 45 days of the late June 1984 transfer of cash and claims by Air Florida to ACH. Thus on a purely factual basis American has failed to carry its burden under 11 U.S.C. § 547(c)(2).

## V. AMERICAN FAILED TO ESTABLISH THAT IT GAVE NEW VALUE

■ American asserts that it gave new value to Air Florida after June 26, 1984 in the form of providing ground handling and other services. American failed to introduce any evidence as to the value of services it provided to Air Florida subsequent to June 26, 1984, and failed to introduce any evidence that it has not been paid for those services. American has therefore failed to meet its burden under 11 U.S.C. § 547(c)(4).

## VI. AMERICAN FAILED TO ESTABLISH THAT JET FLORIDA IS NOT A PROPER PARTY

■ American contends that Jet Florida, "a reorganized entity which is solvent and pays its obligations as they become due, does not have the right to pursue preference actions which comprised property of the Debtor's estate."

The confirmation order entered herein on August 7, 1986, Jet Florida's Exhibit 6, specifically retained the jurisdiction of this Court for the bringing and determination of preference actions such as this one. Eighty percent of the proceeds of such actions go to former creditors of Air Florida under the reorganization plan and the confirmation order. Even the twenty percent remaining in the hands of the reorganized company beneficially goes to Air Florida's former creditors, who owned all of the stock of Jet Florida after confirmation.

This preference cause of action was specifically dealt with in the plan and in the confirmation order, and the proceeds of this cause of action directly and indirectly benefit Air Florida's creditors. Jet Florida is clearly a proper party plaintiff.

## VII. NO STATUTE OF LIMITATIONS BARS THIS CLAIM

■ American contends that this action is barred by the statute of limitations set forth in 11 U.S.C. § 546(a)(1). That statute bars preference actions unless they are brought before the earlier of two years from the appointment of a trustee under 11 U.S.C. § 1104 and the closing or dismissal of the case.

The case has not been closed or dismissed.

No trustee was appointed herein under 11 U.S.C. § 1104. The statute of limitations under 11 U.S.C. § 546(a) does not begin to run against a debtor in possession until and unless a trustee is actually appointed. *In re One Marketing, Inc.*, 8 B.C.D. 917 (Bkcy.S.D.Tex.1982); *Matter of Silver Mill Frozen Foods, Inc.*, 23 B.R. 179 (Bkcy.W.D.Mich.1982); *In re Alithochrome Corp.*, 53 B.R. 906 (Bkcy.S.D.N.Y. 1985); 4 *Collier on Bankruptcy* ¶ 546.- 02[2] (15th ed.).

### CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, Jet Florida has successfully established that American received a preference in the amount $375,- 297.00, against which American has a set-off defense in the amount of $153,378.00, leaving a net recoverable preference for Jet Florida of $221,919.00. A separate final judgment of even date will be entered in conformity herewith.