### In re LEE WAY HOLDING CO., Debtor.

### Frederick M. LUPER, Trustee, Plaintiff,

### v.

### Fred R. LANGLEY, et al., Defendants.

### No. MS-2-89-19.

United States District Court, S.D. Ohio, E.D.

June 13, 1990.

Deborah P. Ecker, Columbus, Ohio, for plaintiff.

Nora E. Jones, Columbus, Ohio, Charles A. Wagner, III, Knoxville, Tenn., for defendants.

## AMENDED OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court upon a Motion for Withdrawal of Reference by E. James Hopple, for defendants Fred R. Langley, et al. Appellants invoke this Court's jurisdiction pursuant to 28 U.S.C. § 157(d), Bankruptcy Rule 5011(a) and L.B.R. 6.6.

Upon consideration and being duly advised, this Court holds that the Seventh Amendment entitles petitioners to their requested jury trial in this matter. This Court further holds that current jury trial provisions under 28 U.S.C. § 1411 (1982 ed., Supp. IV) do not preclude the Bankruptcy Court from conducting jury trials in fraudulent conveyance actions such as the one at hand consistent with the Seventh Amendment and Article III of the Constitution. Should a jury trial come to pass, it may be conducted by the Bankruptcy Court for this district.

## FACTS

The facts in this matter are uncontested. This case was brought before the Bankruptcy Court for the Southern District, Eastern Division of Ohio upon the filing of a Complaint for Avoidance of Fraudulent Conveyances by Frederick Luper, Trustee in bankruptcy, for Lee Way Holding Co., debtor under Chapter 11 of the United States Bankruptcy Code on June 29, 1988.

This action arises as the result of a sale of real estate by the debtor, Lee Way Holding Co., to defendant F.R. Langley Family Trust, et al. This sale of seven (7) parcels of real property located in various locales (Akron, Ohio; Columbus, Ohio; Commerce City, Colorado; Tuscon, Arizona; Indianapolis, Indiana; San Antonio, Texas; and Amarello, Texas) took place on July 13, 1984. Debtor Lee Way Holding Co. subsequently filed a voluntary petition in bankruptcy under Chapter 11 of the United States Bankruptcy Code on March 7, 1985. On January 22, 1987, the Bankruptcy Court appointed Frederick M. Luper as the Chapter 11 Trustee of the bankruptcy estate.

The trustee filed an adversary proceeding against the defendants alleging in his complaint that the sale of the real estate was a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1) as well and pursuant to § 7 of the Uniform Fraudulent Convey-

ance Act, § 544(b) of the U.S. Bankruptcy Code and under state law.

Plaintiff's prayer for relief requests the Court to declare the transfer of the seven parcels of real estate fraudulent; and to "order the return of each parcel of real estate or the value thereof as of the date(s) of transfer to plaintiff;" and costs.

Defendants filed their Answer with a demand for a jury trial and subsequently filed this Motion for Withdrawal of Reference.

## LAW AND ANALYSIS

Two distinct issues are presented in this matter.

### I.

■ The first issue presented goes to the right of a jury trial in Title 11 bankruptcy proceedings.

The Court recognizes that both the counsel for the plaintiff and defendant have presented thorough, well written briefs advocating their respective positions. However, subsequent to their filing, the Supreme Court issued its decision in *Granfinanciera, S.A., et al., v. Paul C. Nordberg*, —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). This Court finds *Granfinanciera* to address the issue clearly.

In *Granfinanciera*, Mr. Nordberg served as the Title 11 trustee in bankruptcy for the Chase & Sanborn Corporation. Nordberg subsequently filed suit against Granfinanciera, S.A. and Medex Ltd. (a corporation located in Columbia, but doing business in the United States) alleging that Granfinanciera had received $1.7 million from Chase and Sanborn's corporate predecessor. Said receipt was within the preceeding one year from the date the bankruptcy was filed and was done allegedly without receiving consideration or reasonably equivalent value in return.

In the course of litigation, both parties requested a "trial by jury on all issues so triable." App. 7. The Bankruptcy Court denied the request for a jury trial deeming a suit to recover a fraudulent transfer "a core action that originally, under the English common law, as the Court understands it, was a non-jury issue." App. to Pet. for Cert. 34. No further consideration was given to this issue in the resolution of the matter by the Bankruptcy Court. The district court did not discuss the request for a jury trial upon appeal from the Bankruptcy Court.

The Eleventh Circuit Court of Appeals found that there was no statutory right to jury trial because the constructive fraud provision under which *Granfinanciera* (and the matter of bar) was brought, 11 U.S.C. § 548(a)(2) (1982 ed. Supp. V) contained no right to jury trial. 835 F.2d 1341 (1988). The Court of Appeals further examined 28 U.S.C. § 1411 (1982 ed., Supp. IV) under which "jury trials (are afforded) only in personal injury or wrongful death suits." 835 F.2d at 1348. The Court of Appeals also found that the Seventh Amendment provided no right to a jury trial in matters that are equitable in nature—including actions to recover fraudulent conveyances, even when a plaintiff seeks only monetary relief, *Id.* at 1348–49.

The Circuit Court, based its opinion in large part on *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), which said that "Congress may convert a creditor's right into an equitable claim and displace any Seventh Amendment right to trial by jury." The Circuit Court held that Congress did convert a creditor's legal right into an equitable claim by designating fraudulent conveyance actions "core proceedings" triable by bankruptcy judges sitting without juries. 835 F.2d at 1349.

The Supreme Court granted petitioner's writ of certiorari.

Petitioners based their claim to a trial by jury exclusively on the Seventh Amendment, which provides: "In suits at 'common law', where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ..." "Suits at common law" is interpreted by the Supreme Court to apply to "suits in which legal rights were to be ascertained and determined in contra distinction to those where equitable rights alone were

recognized, and equitable remedies were administered." *Parsons v. Bedford* 3 Pet. 433, 447, 7 L.Ed. 732 (1930).

The Supreme Court then revived its test as developed in *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). "First, we compare the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law equity. Second, we examine the remedy sought and determined whether it is legal or equitable in nature." *Id.* at 417–18, 107 S.Ct. at 1835. If the determination that, on balance, these two factors entitle a party to a jury trial under the Seventh Amendment, it must be decided whether Congress may and has assigned relevant claim to a non-Article III adjudicative body that does not use a jury as fact finder. *Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2789–90.

Actions to recover fraudulent transfers were often brought at law in late 18th century England under the common law, were conducted before juries. In *Parsons v. Bedford, supra* at (3 Pet.) 447, the Supreme Court made a clear distinction between suits at law and "those where equitable rights alone were recognized," applying the Seventh Amendment right to a jury trial applies to all but the latter action. In *Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2790–92 the Supreme Court concluded that a court of equity would not have adjudicated their claim in 18th century England.

The Supreme Court further found that the claim requested should be denominated in a legal rather than equitable arena. Indeed, the Court cited several examples of previous cases in which the requested return of funds fraudulently transferred were addressed in a legal fashion and would not sustain a bill in equity. *Id.*, —— U.S. at ——, 109 S.Ct. at 2793–94.

Turning to The Bankruptcy Amendments and Federal Judgeship Act of 1984, the Court examined the designation of fraudulent conveyances as "core proceedings" under 28 U.S.C. § 157(b)(2)(H) (1982 ed., supp. IV). Upon referral by a district court, a bankruptcy judge, § 157(a), may adjudicate and issue final judgment in "core proceedings." § 157(b)(1). The sole issue addressed by the Court was whether the Seventh Amendment confers a right to jury trial when Congress allows non-Article III tribunals to adjudicate claim against the petitioners.

In its analysis, the Court traced the history of Congress' limited power to block Seventh Amendment rights only when it creates new statutory "public rights" when commonly assigned to an administrative agency for adjudication. *Id.*, —— U.S. at ——, 109 S.Ct. at 2794–96. The Court was clear in stating that Congress "lacks the power to strip parties contesting matters of private right to their constitutional right to trial by jury." *Id.*, —— U.S. at ——, 109 S.Ct. at 2795. So too, the Court emphasized that, "legal claims are not magically converted into equitable issues by their presentation to a court of equity." *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970).

Upon further analysis, the opinion of the Court finds:

> There can be little doubt that fraudulent conveyance actions by bankruptcy trustees—suits which, we said in *Schoenthal v. Irving Trust Co.*, 287 U.S. [92] at 94–95 [53 S.Ct. 50 at 51–52, 77 L.Ed. 185 (1932) ] (citation omitted), 'constitute no part of the proceedings in bankruptcy but concern controversies arising out of it'—are quintessential suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchiality ordered claims to a pro rata share of the bankruptcy res ... They therefore appear matters of private rather than public right."

A distinction was drawn between "core" and "non-core" proceedings in The Bankruptcy Amendments and Federal Judgeship Act of 1984. In drawing this distinction between "core" and "non-core" proceedings Congress classified fraudulent conveyance actions as "core" proceedings triable by bankruptcy judges. 28 U.S.C. § 157(b)(2)(H) (1982 ed., supp IV). In its

examination of the 1984 Act, the Court determined that Congress did not "create a new cause of action, and remedies therefore, unknown to the common law." *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 461, 97 S.Ct. 1261, 1272, 51 L.Ed.2d 464 (1977). Therefore, Congress can not deprive parties of the Seventh Amendment right to a jury trial merely by placing a cause of action in a specialized court of equity. *Granfinanciera*, —— U.S. at ——, 109 S.Ct. at 2798–2800.

The Supreme Court brought together its analysis of the right to a jury trial in fraudulent transfer actions in a bankruptcy matter by unequivocally granting that right.

This Court believes the facts and applicable law in the matter before it bears a striking resemblance to those in *Granfinanciera, supra*. It is for this Court to decide, however, if the distinction between the fraudulent action claiming conveyance of monetary transfers in *Granfinanciera, supra* and the action claiming a fraudulent conveyance of real estate in this matter is great enough to depart from the Supreme Court's decision.

Petitioner's assertion that their claim requesting an avoidance of the transfer and return of title to the seven parcels of property located in various states is purely a matter of equity is not without merit. It can well be reasoned that the request of specific performance in petitioner's attempt to have *real estate* returned possesses much more weight than having *specific monetary* transfers returned, given the lack of distinction between two monetary *transfers* of identical value. (emphasis added). However, in its prayer for relief, plaintiffs request the Court to declare the transfer of the seven parcels of real estate fraudulent; and to "order the return of each parcel of real estate or *the value thereof* as of the date(s) of transfer to plaintiff," *supra*. (emphasis added). The request for the return of the property *or* its value further lends itself to the opinion of this Court that there is in an action alleging the fraudulent transfer of real es-

tate often not a compelling reason to require specific performance when a remedy at law would be sufficient.

Thus, this Court believes the distinction between the facts and applicable law in this issue as addressed in *Granfinanciera* and this central issue in the matter at hand to be diminimus and that there is a Seventh Amendment right to a trial by jury.

## II.

■ While the Supreme Court came face to face in *Granfinanciera, supra*, with the issue of whether bankruptcy courts may conduct jury trials in fraudulent conveyance suits brought by a trustee against a person who has not entered a claim against the estate, it chose not to determine which court must preside over the jury trial, to which we have determined petitioners are entitled at this time. However, by saying, in *Granfinanciera, supra*, "... one can not easily say that 'the jury would be incompatible' with bankruptcy proceedings, in view of Congress' express provision for jury trials in certain actions arising out of bankruptcy litigation. See 28 U.S.C. § 1411 (1982 ed., Supp. IV); Gibson 1024–1025; Warner, *Katchen Up* in Bankruptcy; The New Jury Trial Right, 63 Am.Bankr. L.J. 1, 48 (1989) (hereinafter Warner). And Justice White's assertion that "juries may serve usefully as checks only on the decision of judges who enjoy life tenure ... overlooks the extent to which judges who are appointed for fixed terms may be beholden to Congress or executive officials, and thus ignores the potential for juries to exercise beneficial restraint on their decision." The Supreme Court leaves the door open to jury trials being conducted by bankruptcy judges.

It is through this opening that the Second Circuit proceeded in *Ben Cooper, Inc. v. Insurance Co. of the State of Pennsylvania*, 896 F.2d 1394 (1990) to establish that bankruptcy judges may conduct jury trials in core proceedings.

In *Granfinanciera*, the Supreme Court presented questions, requiring a decision, regarding the ability of bankruptcy courts

to conduct jury trials, *supra,* —— U.S. at ——, 109 S.Ct. at 2794–96.

### A.

The first decision is whether if Congress has authorized bankruptcy courts to hold jury trials in such actions, that authorization comports with Article III if non-Article III judges preside over them subject to review of the district court.

In its consideration of this first "hurdle" the Second Circuit found that, "(i)f bankruptcy courts have the power to enter final judgments without violating Article III, it follows that jury verdicts in the bankruptcy courts do not violate Article III." It further examined the purpose of Article III, as being to provide a judiciary free from the pressure from other branches of government. This Court is in full agreement that jurors are even less likely to feel pressure from the legislative or executive branches of government than judges, particularly bankruptcy judges who do not enjoy lifetime tenure. *Cooper, supra* 896 F.2d at 1403.

### B.

The second "hurdle" is a bit more complex: do jury trials conducted by a bankruptcy court satisfy the Seventh Amendment's command that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law" given that district courts may presently set aside clearly erroneous factual findings by bankruptcy courts? In its consideration, the Second Circuit, found that in nonconsensual, non-core proceedings the de novo review by the district court may well find the jury trial unconstitutional. However, the Circuit Court found that the review by the district court of final orders in core proceedings is limited to the analogous review that courts of appeals have over district courts. Hence, the Court of Appeals determined that the review of the jury verdict under traditional standards of appellate review does not violate the Seventh Amendment. *Cooper, supra* 896 F.2d at 1403.

This Court embraces the rationale articulated by the Second Circuit and believes it to apply to the case presently before this court. Since the 1984 Act, the manifest direction of the law has been toward the gradual expansion of the authority wielded by the bankruptcy courts. This decision is consistent with that trend.

### CONCLUSION

This Court holds that the Seventh Amendment entitles petitioners to the jury trial they have requested. Further, this Court holds that the bankruptcy court may, consistent with the Seventh Amendment and Article III, conduct a jury trial in this core proceeding.

IT IS SO ORDERED.

### ORDER PERMITTING INTERLOCUTORY APPEAL

This matter was before the Court upon the motion pursuant to 28 U.S.C. § 1292(b) of the defendants for a certification by this Court of an Interlocutory Appeal. It is this Court's Opinion in the Order attached hereto that said Interlocutory Appeal should be GRANTED. The question which is resolved by this Court in this Opinion is one substantially of law and one where substantial grounds for difference of opinion have in fact occurred within the Circuits. Further, it is this Court's belief that an immediate appeal from this ruling will advance the ultimate termination of this case. Therefore, for the reasons so stated in the attached Order, an Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b) is hereby permitted. Further, the proceedings within this action are hereby STAYED pending the outcome of this Interlocutory Appeal.

IT IS SO ORDERED.