**In re BINGHAM SYSTEMS, INC.**

**Jacob C. PONGETTI, Trustee for Bingham Systems, Inc., Plaintiff,**

**v.**

**Rodney H. LEE, d/b/a Columbia Sales Co., Defendant.**

**Bankruptcy No. 88–00551. Adv. No. 91–1114.**

United States Bankruptcy Court, N.D. Mississippi.

Sept. 30, 1991.

Mark S. Larson and J. Michael McGehee, Abstract Law Offices, Gulfport, Miss., for defendant.

Jacob C. Pongetti, Columbus, Miss., trustee.

Louis J. Wade, Culp and Wade, Kansas City., Mo., for trustee.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion to dismiss, as well as, a motion for a jury trial filed by the defendant, Rodney H. Lee, d/b/a Columbia Sales Co.; responses to said motions having been filed by the plaintiff/trustee, Jacob C. Pongetti; and the court having considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), and (E).

### II.

The debtor, Bingham Systems, Inc., was formerly engaged in the trucking business as a common carrier, providing transportation services for the defendant in 1987 and 1988. The debtor was required to charge the defendant specific tariff rates which were set by the Interstate Commerce Commission in keeping with 49 U.S.C. § 10761(a) and § 10762.

On March 16, 1988, the debtor filed a voluntary Chapter 11 bankruptcy case. The case was converted to a Chapter 7 liquidation bankruptcy on August 1, 1989,

and the plaintiff herein, Jacob C. Pongetti, was appointed to serve as the Chapter 7 trustee. The plaintiff, who will be referred to hereinafter as the trustee, filed this suit against the defendant alleging that the debtor undercharged the defendant for the transportation services at rates less than those required by the applicable tariffs. The most recent invoice was dated March 2, 1988, and the total amount demanded by the trustee is $4784.40.

## III.

### MOTION TO DISMISS

■ The defendant states that the trustee's cause of action is barred by the statute of limitations set forth in 49 U.S.C. § 11706(a), as extended on some occasions by the filing of a bankruptcy case pursuant to 11 U.S.C. § 108(a). These Code sections respectively provide the following:

49 U.S.C. § 11706(a):

A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title or a freight forwarder must begin a civil action to recover charges for transportation or service provided by the carrier or freight forwarder within 3 years after the claim accrues.

11 U.S.C. § 108(a):

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

As noted above, this case was converted from Chapter 11 to Chapter 7 on August 1, 1989. The Chapter 7 trustee was not appointed until this date, and, of course, could not have begun a cause of action against the defendant until after his appointment. During the pendency of the Chapter 11 case, Bingham Systems, Inc., as debtor-in-possession, had little reason to initiate this litigation against the defendant because, assuming the trustee's allegations are accurate, it was the instigator of the undercharges. It seems highly unlikely that a debtor-in-possession, while struggling to reorganize, would file a lawsuit against one of its potential customers.

The defendant's attorneys have astutely called the court's attention to 11 U.S.C. § 348(a), which reads as follows:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, *but,* except as provided in subsections (b) and (c) of this section, *does not effect a change in the date of* the filing of the petition, the commencement of the case, or *the order for relief.* (emphasis added)

(Hereinafter all Code sections will be considered Title 11, U.S.Code, unless specifically noted otherwise.)

In essence, § 348(a) provides that the *date* for the order for relief in a converted bankruptcy case is the date of the original order for relief, not the date of the order of conversion. If construed literally, the interaction of § 348(a) and § 108(a) produces an aberrational result in an adversary proceeding such as the one now before this court. Look again at the pertinent facts:

| | | |
|---|---|---|
| 1. | Date of the most recent invoice | March 2, 1988 |
| 2. | Date of the bankruptcy filing | March 16, 1988 |
| 3. | Date that the bankruptcy case was converted to Chapter 7 and the Chapter 7 trustee was appointed | August 1, 1989 |
| 4. | Date that the 3 year statute of limitations provided in 49 U.S.C. § 11706(a) expired | March 2, 1991 |
| 5. | Date that the adversary proceeding was filed by the trustee | April 19, 1991 |

The defendant contends that because of the "relation back" effect of § 348(a), as to the date of the order for relief, the trustee must have filed the subject adversary proceeding before the later of:

1. March 16, 1990—Two years after the order for relief, considering the language of § 348(a), (7½ months after the trustee's appointment), or

2. March 2, 1991—The expiration of the 3 year statute of limitations, (19 months after the trustee's appointment).

In actuality, the Chapter 7 trustee filed this cause of action slightly over twenty months after his appointment. Obviously, he needed a reasonable period of time to investigate the debtor's business affairs to determine if there were any viable causes of action which should be filed. The court recalls that the trustee encountered significant difficulties in obtaining access to the debtor's business records. (See court order, dated June 4, 1990, entered as a result of the trustee's motion to compel the debtor's designated representative to turn over the debtor's books and records.) The court, therefore, is of the opinion that the trustee was not dilatory in investigating and filing this adversary proceeding. Whether this lawsuit is time barred by statute is yet another question.

A strict interpretation of § 348(a) in certain instances could render § 108(a)(2) meaningless. For example, assume that this bankruptcy case had languished in Chapter 11 for over two years, and that the nonbankruptcy statute of limitations, i.e., 49 U.S.C. § 11706(a), was a period of two years rather than three years. Then, if the trustee had only two years from the date of the original order for relief to bring an adversary proceeding, he would never have an opportunity to file a cause of action such as the one now before this court.

The trustee contends that if § 108(a) were read logically and realistically, that he should have two years from the date of his appointment to file the instant lawsuit. The defendant counters this argument by pointing out the provisions of § 546(a), which reads as follows:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or

(2) the time the case is closed or dismissed.

Clearly, § 546(a) gives the trustee a two year period from the date of his appointment to file causes of action under certain enumerated sections of the Bankruptcy Code. These sections are generally considered as the "trustee's avoiding powers." The case law is replete with decisions indicating that the two year period provided in § 546(a) commences when the trustee is appointed, not from the time that the case is actually filed. In other words, in a case converted from Chapter 11, the time that the debtor-in-possession is in place, who is given the same rights and powers as a trustee pursuant to § 1107(a), does not count against the subsequently appointed Chapter 7, 12, or 13 trustee. See, for example *Matter of Silver Mill Frozen Foods, Inc.*, 23 B.R. 179 (Bankr.W.D.Mich.1982); *In re Jet Florida System, Inc.*, 73 B.R. 552 (Bankr.S.D.Fla.1987); and *In re Mahoney, Trocki & Associates, Inc.*, 111 B.R. 914 (Bankr.S.D.Cal.1990). The defendant states that Congress, by structuring § 546(a) in this fashion, obviously understood how to draft a two year period of limitations commencing on the date of the trustee's actual appointment, rather than from the date of the order for relief as set forth in § 108(a). The defendant goes on to say that had Congress wanted to give the trustee a two year period from the date of appointment to bring causes of action, other than those specifically enumerated in § 546(a), it could have done so when drafting § 108(a), using the identical language expressed in § 546(a). Quite frankly, the defendant's argument is persuasive when one reads the statutory language rigidly. On the other hand, Congress could have easily overlooked the effect of § 348(a) when drafting § 108(a).

To conclude this issue, however, the court must turn to an equitable principle which simply cannot be ignored. This principle is the statute of limitations "discovery rule." This rule was discussed thoroughly in *DeHart v. First Fidelity Bank, N.A./ South Jersey,* 67 B.R. 740 (D.N.J.1986). There the trustee, DeHart, had sued the defendant bank for the conversion of negotiable instruments. In addressing the statute of limitations defense raised by the bank in a motion to dismiss, filed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the court stated that the trustee's cause of action did not accrue and the statute of limitations did not begin to run until the trustee, or his predecessors in interest, in the exercise of reasonable diligence, knew or should have known of the facts giving rise to the cause of action. Quotations from this opinion lend insight to the operation of the "discovery rule," to-wit:

Plaintiff argues that the "discovery rule" should be applied so that the statute of limitations would not have begun to run until at least June 24, 1981, the date when the debtors were adjudicated bankrupt and the trustee was appointed.

Statutes of limitations are statutes of repose which reflect a public policy and underlying legislative judgment that claims for redress shall be settled within a reasonable time so that a party against whom a claim is asserted will have a fair opportunity to defend. *Tevis v. Tevis,* 79 N.J. 422, 430, 400 A.2d 1189, 1194 (1970). The discovery rule tempers this underlying policy by engrafting equitable considerations upon limitations statutes. It is a means of mitigating harsh and unjust results which sometimes flow from rigid adherence to a rule of law. *Lopez v. Swyer,* 62 N.J. 267, 273, 300 A.2d 563, 566 (1973). The court in *Lopez* stated:

On the face of it, it seems inequitable that an injured person, unaware that he has a cause of action, should be denied his day in court because of his ignorance, if he is otherwise blameless. Yet such is the result that must follow if the years of the statute are to be inexorably calculated from the moment

of the wrong, whether or not the party aggrieved knows or has reason to know that he has a right of redress. *Id.* at 274, 300 A.2d at 566–67.

*Id.* at p. 743.

·   ·   ·   ·   ·

In analyzing statutes of limitations for the purpose of determining whether to apply the discovery rule, a distinction has historically been drawn between statutes based upon the accrual of a cause of action and those based upon the occurrence of a fixed objective event. In *Evernham v. Selected Risks Ins. Co.,* 163 N.J.Super. 132, 136, 394 A.2d 373 (App.Div.1978) the court stated:

The discovery principle developed in our tort law ... is peculiar to statutes of limitation based upon accrual of the cause of action, accrual being postponed if plaintiff neither knows nor has reason to know the facts equating with the likely accrual of a cause of action. [Citations omitted]. But a statute forbidding the institution of an action, otherwise maintainable, later than a period of years after a fixed objective event, generally precludes the operation of the discovery rule. [Citation omitted].

The court in *Presslaff v. Robins,* 168 N.J.Super. 543, 546, 403 A.2d 939, 940 (App.Div.1979) stated that "It is settled law in this State that the discovery principle is not applicable except in relation to an accrual period of limitations." The statute at issue here is of the "accrual" variety, and is similar in this regard to the statute to which the discovery rule was first applied in *Fernandi v. Strully,* 35 N.J. 434, 173 A.2d 277 (1961).

*Id.* at p. 744.

*See also, Staheli v. Smith,* 548 So.2d 1299 (Miss.1989), and *Owens–Illinois, Inc. v. Edwards,* 573 So.2d 704 (Miss.1990).

Insofar as 49 U.S.C. § 11706(a) is concerned, the trustee, stepping into the shoes of a debtor, must commence his cause of action to recover transportation charges within three years after the claim accrues. In the case before this court, the trustee

had no right to bring a cause of action until after his appointment, and until his investigation revealed that there was a viable cause of action. As stated earlier, it is obvious that the trustee's predecessor in interest, the debtor-in-possession, would not likely bring this lawsuit because it had instigated the undercharges. Therefore, this court relying on its equitable powers, concludes that the "discovery rule" applies to the facts in this case. The trustee should have a two year period of limitations, beginning on the date of his appointment, to bring the instant cause of action.

Consequently, the motion to dismiss filed by the defendant is not well taken and will be overruled by a separate order of this court.

## IV.

### MOTION FOR A JURY TRIAL

As set forth earlier in this opinion, the court indicated that this proceeding was a core proceeding. Since this determination is a "lead in" to the decision as to whether the defendant is entitled to a jury trial, the court will discuss this matter in further detail.

28 U.S.C. § 157(b)(2) contains a non-exclusive list of proceedings that are denominated as core proceedings. There are essentially two attributes of core proceedings when compared to related or non-core proceedings:

A. In core proceedings, the final order may be entered by the bankruptcy judge.

B. There is a clearly erroneous standard of appellate review as to the factual findings of the bankruptcy judge. In other words, the appellate court should not reverse the bankruptcy court on findings of fact unless the bankruptcy court decision was clearly erroneous. On conclusions of law, however, as in any proceeding, the appellate court would apply a no deference or de novo standard of review.

■ 28 U.S.C. § 157(b)(3) provides that the bankruptcy judge shall determine whether a given proceeding is core or non-core, and that such a determination shall not be made solely on the basis that its resolution may be affected by state law. In making this determination, the bankruptcy judge should consider the following:

A. Whether the complaint states exclusively a state law cause of action.

B. Whether the cause of action is filed against a defendant who has not filed a claim against the bankruptcy estate.

C. Whether bankruptcy laws would be involved in the resolution of the dispute.

D. Whether the cause of action will impact the administration of the bankruptcy estate.

*See, Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464 (D.Mass. 1985).

By virtue of 28 U.S.C. § 157(c)(1), a bankruptcy judge may nevertheless hear a non-core proceeding but the authority is limited. In such proceedings, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court. The final order shall then be entered by a district judge after considering the bankruptcy judge's proposed findings and conclusions, as well as, after reviewing de novo those matters to which any party has timely and specifically objected. However, as set forth in 28 U.S.C. § 157(c)(2), the bankruptcy judge may enter a final order in a non-core proceeding *with the consent of all the parties* subject to the traditional clearly erroneous standard of appellate review as to the factual findings.

An excellent case discussing the distinction between core and non-core proceedings in *Matter of Wood,* 825 F.2d 90 (5th Cir. 1987). This case also discusses such other jurisdictional tactics as discretionary and mandatory abstention, as well as, discretionary and mandatory withdrawal of the reference to the bankruptcy court.

■ In this particular proceeding, the Chapter 7 case trustee has initiated a cause of action in an attempt to bring funds into the bankruptcy estate for distribution to the estate creditors in conformity with the priorities set forth in the Bankruptcy Code. If the plaintiff were the Chapter 11 debtor in possession, rather than the trustee, the decision as to whether this proceeding was

core or non-core would be different. The facts in this proceeding, in the opinion of this court, are distinguishable from those in the Supreme Court's decision, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Consequently, the court reiterates its earlier conclusion that this is a core proceeding.

■ The court must now address the issue of whether a defendant in an adversary proceeding, who has not filed a claim against the bankruptcy estate, is entitled to a jury trial in the bankruptcy court. Although this has been a fairly controversial issue for several years, the Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg (In re Chase and Sanborn Corp.)*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), did little to resolve the controversy. In *Granfinanciera*, Nordberg, the bankruptcy trustee, filed a fraudulent transfer cause of action against Granfinanciera, S.A., and Medex, Ltd., two Columbian entities. Both of the defendants demanded a trial by jury. The bankruptcy court denied the jury trial requests and after a bench trial entered a monetary judgment against both defendants on constructive fraud counts. The district court and the Eleventh Circuit affirmed, holding that actions to recover fraudulent conveyances were equitable in nature, even when money damages were sought, and that a jury trial was not appropriate under the circumstances.

Justice Brennan, writing for the majority, began his analysis with a discussion of whether the proceeding was equitable in nature or legal in nature. He concluded, after an exhaustive examination of the underpinnings of the cause of action, as well as, a comparison of the types of lawsuits that would be tried by English courts of law as opposed to English courts of equity in the 18th century, that a lawsuit to recover monetary damages is legal in nature and not equitable. He added that Congress could not convert a legal claim to an equitable claim, avoiding the Seventh Amendment jury trial right, by relabeling the cause of action a core proceeding.

Justice Brennan then discussed whether the cause of action involved public as opposed to private rights. In previous years, lawsuits involving private rights had been considered as causes of action solely between private citizens where the United States Government in its sovereign capacity was not a party. Following its recent decisions expanding the definition of public rights, (*Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); and *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)), the Court indicated that, under certain circumstances, a cause of action can properly be considered as involving public rights even when the government is not a party. The Court explained that the public rights category could include actions between private parties where, "Congress acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." 492 U.S. 33 at 54, 109 S.Ct. 2782 at 2797.

The aforesaid definition, loosely translated, apparently means that public rights can involve the allowance and disallowance of claims in the bankruptcy estate or the adjustment of the debtor-creditor relationship. Concluding this analysis, and relying on two other earlier decisions, (*Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932); and *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)), the Court then said that since the defendants had not filed claims against the bankruptcy estate that the cause of action initiated by the trustee amounted only to a lawsuit affecting private rights.

Thus having concluded that the proceeding was essentially legal in nature, as well as, involving only private rights, the Court said that the defendants were entitled to a jury trial which is guaranteed by the Seventh Amendment. The Court offered no

guidance as to where the jury trial should be conducted. The murkiness of this decision is amplified when the Court refers to the trustee's cause of action on several occasions as a "fraudulent preference."

Although the Supreme Court reached the foregoing conclusions, it did not disrupt the core designations given by Congress in 28 U.S.C. § 157(b)(2)(F) and (H) to voidable preference and fraudulent conveyance causes of action. Therefore, the decision of this court, set forth hereinabove, is not inconsistent with *Granfinanciera.*

Justice Scalia's dissent in *Granfinanciera* has caused a great deal of consternation in bankruptcy circles. He indicated that if the United States Government were not a party to the proceeding that the proceeding could only involve private rights. Even though the jurisdictional structure of the bankruptcy courts should be much firmer now, in a Constitutional sense, than in pre–*Marathon* 1982, one can only wonder whether another *"Marathon* like" decision is lurking just around the corner. This concern exists even though the present jurisdictional scheme, devised by Congress in the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), has been found Constitutionally sound in numerous lower court decisions.

Following the *Granfinanciera* decision, there have been three circuit decisions to date which have addressed the issue of whether a jury trial is available in the bankruptcy court. Allowing a jury trial is the case of *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2nd Cir.1990). Disallowing a jury trial are the decisions of *In re United Missouri Bank,* 901 F.2d 1449 (8th Cir. 1990) and *Kaiser Steel Corp. v. Frates,* 911 F.2d 380 (10th Cir.1990).

Many defendants now are attempting to utilize the tactic of a jury trial demand, since the issue is so thoroughly confused, in an effort to "bury" voidable preference and fraudulent conveyance proceedings in the district court where they will be given a very low priority. The ability to delay affords these defendants an extraordinary degree of leverage in negotiating a settlement with a plaintiff/trustee.

An excellent opinion, which thoroughly analyzes the *Granfinanciera* decision, as well as, the Article III "safeguards" that were woven into the bankruptcy jurisdictional structure by Congress via BAFJA, is *In re Rheuban,* 128 B.R. 551 (Bankr. C.D.Cal.1991). Judge Vincent P. Zurzolo correctly concludes that neither Article III nor the Seventh Amendment bar bankruptcy judges from conducting jury trials in core proceedings. Perhaps the most significant comment by Judge Zurzolo is his conclusion that conducting a jury trial is a check on the exercise of the judicial power of the United States, rather than an exercise of the judicial power. A pertinent excerpt from the text of his opinion is set forth as follows:

> None of the above-cited decisions concerning this issue provide any convincing authority for the untested premise that conducting a trial by jury is an exercise of the judicial power of the United States. I suggest, for the reasons stated below, that trial by jury is not at all an exercise of judicial power; rather, it is the opposite—a check on the exercise of judicial power that is constitutionally guaranteed to citizens engaged in civil litigation in a cause of action that would have been heard by an 18th century English court of law.

The Constitution does not define the judicial power of the United States. The *Marathon* court, in analyzing the deficiencies of the 1978 Bankruptcy Reform Act, noted that the Act authorized "the bankruptcy courts [to] exercise all ordinary powers of district courts, including the power to preside over jury trials ..." 458 U.S. 50, 85, 102 S.Ct. 2858, 2878. The Court in *Marathon* did not conclude, however, that if Congress authorized non-Article III judges to conduct jury trials, that in and of itself would violate Article III, Section 1. *In re Gaildeen,* 59 B.R. 402, 407 (N.D.Cal.1986). Nor did the *Marathon* Court conclude that conducting jury trials was a form of judicial power that could only be exercised by Article III protected judges. Rather, the Court concluded that the grant of judicial power in the 1978 Bankruptcy Reform

Act viewed as a whole violated the protections of Article III, Section 1. *In re Gaildeen,* 59 B.R. 402, 407; *In re Stoecker,* 117 B.R. 342, 344–45 (N.D.Ill. 1990).

Indeed, in *Granfinanciera* the Court held that:

> One cannot easily say that 'the jury would be incompatible, with bankruptcy proceedings, in view of Congress' express provision for jury trials in certain actions arising out of bankruptcy litigation. [Citations] And Justice White's claim that juries may serve usefully as checks only on the decisions of judges who enjoy life tenure, [Citation] overlooks the extent to which judges who are appointed for fixed terms may be beholden to Congress or executive officials, and thus ignores the potential for juries to exercise beneficial restraint on their decisions. 109 S.Ct. 2782, 2801.

The Court's conclusion in *Granfinanciera* that jury trials constitute a check on judicial power, rather than an essential attribute of it, is supported by examining the historical underpinnings of the Seventh Amendment. The best analysis of these matters I have found is Wolfram, "The Constitutional History of the Seventh Amendment," 57 Minn.L.Rev. 639 (1973) ...

*Id.* at 565 and 566.

Other cases supporting this conclusion are *In re Harbor Park Associates, Ltd. Partnership,* 112 B.R. 555 (S.D.N.Y.1990); *In re Lee Way Holding Co.,* 115 B.R. 586 (S.D.Ohio 1990); *In re Jackson,* 118 B.R. 243 (E.D.Pa.1990); and *In re Windmill Farms Management Co.,* 116 B.R. 755 (Bankr.S.D.Cal.1990).

For the reasons cited hereinabove, this court is of the opinion that the defendant is entitled to a jury trial in this core proceeding. The jury trial will be conducted by the bankruptcy court.

An order will be entered consistent with this opinion.